JOE JUDGE and M. BUNTING, Plaintiffs, v. F. M. POWERS, JUDGE, and E. V. TUTTLE, Defendants.

**Intoxicating liquors:** CONTEMPT: CONVICTION. A judgment of contempt for violation of an injunction prohibiting the sale of liquor is not a conviction within the meaning of the statute providing that one convicted of the illegal sale of liquor, or permanently injoined from making sales, shall not thereafter be permitted to sell liquor for·a period of five years, as the term "convict" ordinarily means a finding of guilt by the verdict of a jury.

**Same:** JUDGMENTS: IMMATERIAL FINDINGS. Where a judgment of contempt for violation of a liquor injunction found that defendant had violated the injunction on certain days, the further recital that defendant thereafter complied with the law. and the terms of the injunction, and had been since that time lawfully conducting the business, was immaterial and no part of the judgment; as a judgment is the final determination by a competent judge or court of matters submitted by the parties for decision, and findings or recitals embraced in the same instrument, but not essential to or involved in the judgment, will not affect its validity.

*Certiorari from Carroll District Court.*—HON. F. M. POWERS, JUDGE. .

FRIDAY, MAY 17, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*B. I. Salinger* and *L. H. Salinger,* and *Ralph Maclean,* for plaintiffs.

*M. S. Odle,* for defendants.

SHERWIN, J.—On the 8th day of December, 1908, the plaintiffs herein were permanently enjoined from illegally

selling intoxicating liquors. After the injunction had issued, the plaintiffs continued the sale of liquors on the same premises, and on the 7th of December, 1910, an information was filed charging them with contempt for a violation of the injunction. On the 18th day of April, 1911, judgment against the defendants (plaintiffs herein) by consent was entered on that information, and they were fined. That judgment was rendered by Judge Hutchinson, and it was determined therein that the injunction had been violated on the 8th, 9th, 10th, and 11th days of December, 1908. The judgment further recited that "on the 12th day of December, 1908, the defendants complied with the provisions of the mulct law by doing the things prescribed by statute as a condition precedent to the conduct of said business, and have ever since and are now conducting their saloon and making sales of liquor in compliance with the law of the state regulating the same and in such manner as to not violate the injunction above referred to." Judge and Bunting still continued business at the old stand, and on the 3d day of October, 1911, a second information was filed charging them with contempt in violating the injunction after the 7th day of December, 1910. Upon a trial, the court found that defendants had violated the injunction since the 15th day of December, 1910, and they were again adjudged guilty of contempt and fined, whereupon this proceeding was instituted.

But two questions are before us for determination as we view the case, and they are both of law. The Thirty-Third General Assembly, chapter 142, section 3, enacted this law: "No person who shall be hereafter convicted of violating the laws of this state relating to the sale of intoxicating liquors, or shall be permanently enjoined by any court of this state for such violation, shall be permitted to sell intoxicating liquors in this state within five (5) years from the date of such conviction or injunction, and no

resolution of consent or permit shall be granted such person within said period."

On this branch of the case, the only question presented or argued by counsel is whether the judgment of April 18, 1911, decreeing these plaintiffs guilty of contempt, was a "conviction of violating the laws of this state relating to the sale of intoxicating liquors" within the meaning of section 3 of chapter 142, Acts 33d G. A. We have held that proceedings to punish for contempt in violating a liquor injunction are not criminal proceedings. *Gibson v. Hutchinson, Judge,* 148 Iowa, 139; *Brown & Bennett v. Powers, Judge,* 146 Iowa, 729; *McGlasson v. Johnson,* 86 Iowa, 477.

1. INTOXICATING LIQUORS: contempt: conviction.

And it would seem to follow that the violation of an injunction in a nuisance case is not a crime as the word is ordinarily understood and defined. In the *Gibson* case, *supra,* we said: "It is a well-settled proposition that, while the proceedings to punish for contempt may in some features resemble hearings in criminal proceedings, and judgment of fine and imprisonment may be entered, yet the object and purpose thereof is not to punish a public offense but to compel obedience to and respect for the order of the court." The statute provides that words and phrases shall be construed according to the context and approved use of the language unless such words and phrases have acquired a peculiar and appropriate different meaning in law. It has always been the holding of this court that proceedings in contempt are not criminal, and this construction of the provisions of the statute punishing for contempt will be presumed to have been in the minds of the legislators when the statute under consideration was enacted, and the word "convicted" must be construed in the light of such knowledge. That the word "convicted" as here used has not acquired a peculiar and appropriate meaning different from its approved use is manifest, for

we have, in a sense at least, held otherwise in the cases already cited.

The word "conviction" ordinarily signifies the finding of the jury by verdict that the prisoner is guilty. *Hackett & Freeman v. Graves,* 103 Iowa, 296; Bishop, Statutory Crimes, section 348; *Quintard v. Knoedler,* 53 Conn. 485 (2 Atl. 752, 55 Am. Rep. 149). "Conviction is a technical term applicable to judgment in a criminal prosecution." Chief Justice Marshall in *Amnidon v. Smith,* 1 Wheat. 461 (4 L. Ed. 132). An ordinary conviction takes place in a criminal prosecution by indictment, etc., and may either consist of the prisoner's confession and plea of guilty or of the verdict of guilty found by a jury. 4 Blackstone, Com. 262; 1 Bishop, Criminal Law, section 223; Bouvier's Law Dict. 435. Webster defines the word "convicted" as the past participle of the verb "to convict," which means to prove or find guilty of an offense or crime charged. Where a license was made void if the person holding it suffer conviction by a court of competent jurisdiction, it was held that "conviction" meant either a finding by a jury that the prisoner was guilty, or else a judgment and sentence of the court upon a verdict or confession of guilt. *Commonwealth v. Kiley,* 150 Mass. 325 (23 N. E. 55). To same effect is, *Hartley v. Henreta,* 13 S. E. 375 (W. Va.). "A 'conviction' is an adjudication that the accused is guilty. It imports all that the statute requires before holding one to bail, and, more, it involves not only the *corpus delicti* and the probable guilt of the accused but the actual guilt." *Nason v. Staples,* 48 Me. 123. A "conviction" is the finding of guilt. *People v. Adams,* 95 Mich. 543 (55 N. W. 461); *Egan v. Jones,* 21 Nev. 433 (32 Pac. 929); *State v. Barnes,* 24 Fla. 153 (4 South. 560); *Blair v. Commonwealth,* 66 Va. 850. We reach the conclusion that punishment for contempt was not a "conviction" of violating the laws of this state relating to the sale of intoxicating liquors.

II.   There was evidence showing who some · of the
owners of property situated within fifty feet of the saloon
were, and it was stipulated by the defendants, subject to
objections as to the competency or materiality
2. SAME:
   judgments:   of such testimony, that the written consent
   immaterial
   findings.    of such owners, covering a period to Decem-
ber 31, 1910, was not then on file in the auditor's office.
The court ruled that the defendants' objections were good
and that it was immaterial whether consent had been given
by such owners because of the recital in the judgment of ·
Judge Hutchinson, and the matter ended there.   The trial
was closed, as we understand the record, on or about the
16th day of October, 1911, and judgment was rendered in
the proceeding on November 18, 1911, in which, as already
stated, the court found the injunction had been violated
since December, 15, 1910.   The specific objection made
to the evidence touching the want of consent was and now
is that there was an adjudication by Judge Hutchinson
that defendants' business was lawfully conducted after
December 12, 1908, and up to April 18, 1911, the date of
his judgment.   If prejudice were shown to have resulted
because of the ruling of. the defendant judge that the con-
sent matter was immaterial, we should feel disposed to
hold that he had no right to change his ruling, as he must·
be presumed to have done, without giving the defendants
an opportunity to meet the new ruling by the introduction
of further evidence if they so desired.

But the question· of prejudice on that account is not
before us.   The only question before us is whether the
judgment rendered by Judge Hutchinson was an adjudica-
tion of the matter now before us.   We do not think it
was.   No issue was before him which warranted the state-
ment in the judgment.   The sole question for him to adjudi-
cate was whether the defendants had violated the injunction
before the information was filed, and this, we think, was
all that his judgment did determine.   True it is that he

recited certain preliminary facts, but this recitation of facts did not become any part of his final judgment proper. What he did adjudge and decree was that the defendants had violated the injunction by their acts on certain days in December, 1908, and, this being found, it was immaterial whether they had or had not complied with the law at all other times, and nothing further was said on the subject. It finally then comes to this. In his finding of facts, the court recited immaterial matter, but the real judgment was as we have stated.

A judgment at common law is the determination or sentence of the law pronounced by a competent judge or court "affirming that, upon the matters submitted for its decision, a legal duty or liability does or does not exist." 23 Cyc. 665. "That only is a judgment which is pronounced between the parties to an action upon the matters submitted to the court for decision." 4 Words & Phrases, 3828; *Bullock v. Bullock*, 52 N. J. Eq. 561 (30 Atl. 676, 27 L. R. A. 213, 46 Am. St. Rep. 528). "A judgment is the final determination of the rights of the parties in an action." 4 Words & Phrases, 3829, and cases there cited. A judgment is the final and definite sentence or decision of the court by which the merits of a cause are settled or determined. *Coffey v. Gamble*, 117 Iowa, 545. A finding of facts or conclusions of law by the judge during or after the trial of the case, or his opinion upon matters submitted, whether oral or in writing, does not necessarily constitute a judgment; "it is not such a definitive sentence or adjudication as is contemplated by that term." 23 Cyc. 666, and cases cited.

And the findings and judgment may be incorporated in the same instrument without affecting the validity of the judgment and without making the findings a part of the judgment proper. 23 Cyc. 670; *Hopkins v. Warner*, 109 Cal. 133 (41 Pac. 868); *Pier v. Prouty*, 67 Wis.

218 (30 N. W. 232); *Morgan v. Eggers,* 127 U. S. 63 (8 Sup. Ct. 1041, 32 L. Ed. 56).

A finding of fact does not constitute a conviction. There must be also the judgment of the court. *Blaufus v. People,* 69 N. Y. 107 (25 Am. Rep. 148).

Other matters are discussed by plaintiffs, but our conclusion on the first branch of the case renders their consideration unnecessary. For the reasons given in the second division hereof, the judgment must be *Affirmed.*

