FRED BABCOCK, Appellee, v. CITY OF DES MOINES et al., Appellants.

**SOLDIERS' PREFERENCE ACT:** Discharge—Reduction of Salary
1  —Abolition of Position—Bad Faith—Effect. One entitled to a preference in appointment or employment under the Soldiers' Preference Act may be legally deprived of his position (a) by a reduction in salary or (b) by the abolition of the position, *provided such reduction or abolition is not made with the intent to bring about the discharge of the incumbent.* Evidence reviewed, and held insufficient to show that an office or position had been abolished with the intent to bring about the discharge of the soldier incumbent. (Section 1056-a15, Code Supplement, 1913).

**APPEAL AND ERROR:** Parties Entitled to Allege Error—Error
2  Favorable to Appellant—Non-appellants. Principle recognized that a non-appellant may not complain of errors detrimental to himself, nor may an appellant complain of errors favorable to himself.

**SOLDIERS' PREFERENCE ACT:** Discharge—Abolition of Position—Evidence. Evidence consisting of certain acts and pro-
3  ceedings of municipal authorities reviewed, and held to show · that a certain office or position had been abolished.

**SOLDIERS' PREFERENCE ACT:** Discharge—Abolition of Office—
4  Bad Faith—Burden of Proof. One entitled to a preference un-

der the Soldiers' Preference Act, and suffering a discharge by reason of the abolition of the position held by him, has the burden to show that such abolition was in bad faith,—that is, with the intent to bring about his discharge.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

MONDAY, MAY 14, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

SUIT in equity, involving whether defendants have acted in contravention of what is known as the Soldiers' Preference Law.—*Reversed.*

*H. W. Byers, Guy A. Miller* and *Thos. Watters, Jr.,* for appellants.

*O. M. Brockett,* for appellee.

SALINGER, J.—I.   The plaintiff is with-

1. SOLDIERS' PREFERENCE ACT: discharge: reduction of salary: abolition of position: bad faith: effect.

in a class who may invoke the so-called Soldiers' Preference Law.   He claims, and the district court found, that he was unlawfully discharged, in violation of that law.   Its provisions are found in Sections 1056-a15 and 1056-a16, Supplement to the Code, 1907.   In effect, and so far as material here, they are:   That, in every public department of cities, certain persons shall be entitled to preference in appointment, employment and promotion over other persons of equal qualifications.   A refusal to allow the preference, or a reduction of compensation intended to bring about the resignation or discharge of one entitled to the preference, gives a right of action.   No one entitled to the preference shall be removed save after hearing upon due notice upon stated charges, and with right of review.

As we understand it, no refusal to allow a preference

is involved here; that is to say, it does not seem to be claimed, and, at any rate, is not established, that anyone was preferred over plaintiff in an original giving of employment. The most plaintiff claims on this head is that he was employed, was discharged, and that others than he have since been doing the work which he could and would have performed had he not been discharged. While such discharge and permitting the work to be done by others, might, in some circumstances, violate the statute, the violation would not be undue preferment in employing, but unjustified discharge. It should be added that, at all events, there is no evidence that those now doing the work aforesaid are not, as well as plaintiff is, honorably discharged soldiers, and, as much as he, entitled to the benefit of the Soldiers' Preference Law.

On careful examination, the contention of the plaintiff narrows to two claims: First, that his discharge was forced upon him by a reduction of salary, made in bad faith, and unjustifiable. He presents, and it is true, that no charges were filed against him, and we assume that no charges were justified. But the salary of an employee, even one entitled to the benefits of said statute, may be reduced without violating that statute, and it is only a reduction which is intended to bring about a resignation or discharge that the statute condemns. His compensation was reduced. But the decree of the district court finds expressly:

"That the evidence in support of that part of the plaintiff's petition which complains of reduction of his salary, and charges that the same was had and done by the defendants in bad faith, and for the purpose of bringing about the resignation or discharge, is not sustained by the evidence."

The appellants, of course, do not com-

2. APPEAL AND ER- plain of this finding, because, so far as it
ROR: parties
entitled to al- goes, it is in their favor.   The appellee has
lege error: er-
ror favorable to not appealed, and is in no position to have
appellant:
non-appellants.  this finding, or rather the decree upon such

finding, set aside or disregarded.   It there-
fore becomes the law of the case on this appeal, though the
appeal is triable *de novo;* and we must find that the statute
was not violated in reducing the salary of the plaintiff.·

II.   The plaintiff charges further that he was unlaw-
fully discharged by the agency of a pretended abolition of
the position he occupied in the employ of the city.   As we
understand him, he says:   First, that said position was
never abolished; that, notwithstanding, the city insists that
what action was taken does abolish the position; and sec-
ond, that, if there was an abolition, it was in bad faith, and
a violation of the statute, as much so as if resignation or
discharge had been brought about by a colorable and un-
justified reduction of compensation.

The statute prohibits reducing compensation with in-
tent to bring about resignation 'or discharge, and, so far as
its terms go, stops there; that is to say, it does not in words
prohibit the bringing about a discharge by the agency of an
abolition of place made in bad faith to work a discharge.
But the statute is highly remedial, and intended to give
special and deserved privileges to one class of our citizens
in consideration of services rendered the country in time of
need.   We should construe it, when within reason possible,
so that its evident purpose may be accomplished.   So con-
struing, we hold that a bad-faith abolition, intended to
bring about the discharge of one within the Soldiers' Pref-
erence Law, is within the spirit of that law and prohibited
by it.   If a city that had through its officers expressed ill
will towards an employee, and so declared an avowed pur-
pose to accomplish his resignation or discharge, should one

day abolish the position occupied by that employee, and the next day re-create it and fill it with someone not within the Soldiers' Preference Law, not more competent than the former and soldier employee, and should pay the new incumbent of the re-created position a larger compensation than had been paid before, no one should contend that the mere going through of the ceremony of abolishing the place or office would avoid the law. The supposed is an extreme case. Others differing in degree only may present an abolition that the law condemns. The vital questions, then, are whether the position occupied by the plaintiff was abolished, and, if so, whether the abolition was in bad faith and made with intent to force the discharge of the plaintiff.

### 2-a

3. SOLDIERS' PREFERENCE ACT: discharge: abolition of position: evidence.

If the position once occupied by plaintiff has been abolished, the abolition was effected by the adoption of a resolution about April 28, 1914, wherein the governing body of the defendant city resolved that certain salaries, with certain exceptions, be fixed at the same figures that prevailed the year preceding, one of the exceptions being "the clerk in the record room, which is hereby abolished." Since the adoption of this resolution, and by reason of the interpretation thereof on part of the city, the plaintiff has not been permitted to work for the city, and has received no payment for services, though he has tendered such services, and may be assumed to be ready, able and willing to perform them. As we gather it, the plaintiff contends that the foregoing things did not work the abolition of the position held by him, because it deals in terms with "the clerk in the record room," and that he has never been such clerk, if it be assumed that anyone has been. To deal with this contention, we are required to give consideration to so much of the record as discloses or tends

to disclose just what position the plaintiff held under employment by the appellant city. This employment began in the spring of 1904, and then consisted of examination of the city's records and accounts of the various offices of the city, and at this time, according to his petition, plaintiff became regularly employed as a clerk in the office of the ·city auditor, entering his duties as such on June 1, 1904. At the time he thus began work, such work was limited to assisting the auditor and his deputy in the work of their office, such as looking after the bills, checking schedules, checking and entering warrants, and making the proper entries in the various records of the office. In the course of a few months, the care of the requisite printing for the various offices of the city, and of the office supplies, and of the work of preparing and altering various blanks and forms used, was assigned to plaintiff. About April 1, 1910, his salary was raised to $100 a month, and at this time, the classification and organization of the work assigned to him had assumed the character of a distinct department or position under the immediate charge of the auditor's department, and under the general supervision of the superintendent of the department of accounts and finances.

When, about this time, the city adopted what is known as the commission plan of government, the duties of the position occupied by plaintiff came under the supervision of the superintendent of accounts and finances, but still continued to be a subordinate position in or department of the work of the office of the city auditor. The work assigned to plaintiff developed, and by his help became classified and systematized, and he finally became the custodian of the room devoted to the deposit of records and filing appliances, wherein supplies for the various offices of the city government were kept, and where requisitions therefor were honored and supplies issued thereon. In addition, he was put in charge of keeping the accounts for printing

and binding incidental to the business of the various of-
fices of the city government, the filing of bills, and work
of like kind. An amendment to petition claims that the
services aforesaid were merely a part of the duties and
work of the office of the city auditor, and that such services
did not, in and of themselves, constitute an independent
department; that no distinct office has been created, either
by law or ordinance, which is known as either clerk of the
record room or clerk of the record hall, but it is conceded
that such designation has been sometimes applied to the
plaintiff, solely by way of convenient distinction and to in-
dicate in a general way the character of the duties assigned
to him by the auditor, under whose supervision he was ren-
dering his services. He kept some of the records for the
purchasing agents.

It was stipulated that there was no ordinance creat-
ing the office of clerk of the record hall or custodian of the
record hall, and that, so far as reference in the appropria-
tion ordinances is concerned, the plaintiff occupied no of-
fice under the city except a mere clerkship in the office of
the city auditor, and that there is no ordinance defining the
position to be other than that. The witness Hanna testi-
fied that it was his recollection that, when he went into the
office of mayor, one member of the council introduced the
plan of assigning one of the clerks in the auditor's depart-
ment to the charge of the record hall, and that it was then
understood that plaintiff was to have charge of the record
room and assist in taking care of minor supplies and rec-
ords; that the plaintiff's work was done in a room by him-
self, which room was kept open, and wherein was allowed
access to the records by any who desired to enter, with-
out getting a key, and that, since the alleged abolition, the
record room has been closed and the work of the plaintiff
transferred; that plaintiff was in charge of the record
room.

The witness Van Hosen says that he is an employee in the department of accounts and finances; that this is the department in which the auditor is, and that, so far as he knows, the work performed by the plaintiff in 1913 was to have charge of the record room and the filing of the auditor's bills, namely, all of the bills of the city, and having charge of the printing and supplies. The plaintiff himself testifies that in the beginning his duties were checking rolls and accounts, handling warrants, placing these on the record, making different reports, and framing up the different record books, and that he did this kind of work all the way through.

It appears, too, that, in an appropriation ordinance adopted on the 31st day of March, 1913, $900 was appropriated to pay for the services of "clerk record hall," and that, subsequent thereto, the plaintiff accepted payment for his services at the rate of $900 a year, and that, if this ordinance does not appropriate for his services, no appropriation therefor was made.

We are irresistibly led to the conclusion that the resolution which abolished "the clerk in the record room" was intended to abolish the position occupied by this plaintiff at the time said resolution was adopted, and that all parties, including himself, so understood. And if no bad faith or prohibited ulterior motive taints what was done, the position once held by the plaintiff has been abolished, and he may not complain. The Soldiers' Preference Law is not intended to take from municipal governments the power, in the honest administration of their affairs, to do away with positions created by the municipality.

### 2-b

4. SOLDIERS' PREFERENCE ACT: discharge: abolition of office: bad faith: burden of proof.

The question remains whether there was any bad faith. On solving it, we are not helped by the finding that the salary reduction was made in good faith. The statute provides that the burden of proving incom-

petency or misconduct shall rest upon the party alleging
the same.   But that is not equivalent to a requirement that
the burden is upon the appellant city to show not only that
it abolished a place occupied by plaintiff, but did so in good
faith, and without any ulterior motive condemned by the
statute.   As to this last, the burden rests upon this plain-
tiff, and we have to determine whether he has discharged
it.   Unless we find that he has done so, the decree below
is not sustained by the evidence.

The trial court found that the reduction of salary was
justified; also that all allegations of the petition, except
one, charging reduction of salary in bad faith, were true.
It found, of necessity, therefore, that plaintiff had dis-
charged the burden of proving that the abolition was in
bad faith.   We are constrained to say that we find no war-
rant for this conclusion in the evidence.   Putting it at its
strongest for the plaintiff, it can be found that, up to a cer-
tain point in his service, the same was eminently satisfac-
tory, and that his compensation was voluntarily increased.
It can be found that the work performed by him in the past
has been and is increasing in volume, and that it must be
and is being performed by others, and that, at the time when
he was compelled to stop, he was doing more work than
ever before, and as satisfactorily as ever; and that at one
time, one Needham, a member of the defendant city's coun-
cil, intimated that it would be better if plaintiff were out of
there.

On the other hand, plaintiff states, in amendment to his
petition, that in the past the duties of the office of the
auditor and work done under its immediate supervision
have required five persons.   It appears without dispute
that it is now done by four persons; that is to say, while
before it required four persons and plaintiff, the work is
now done by four without plaintiff.   The witness Hanna
testifies that it was his idea, and he urged strongly, the

year before the abolition, there should be four men instead of five. It is stipulated that the entire work as done when plaintiff was connected with it is still performed, and by these four; and that, since April 1, 1914, the department of accounts and finances is conducted at a decrease in annual expenditure of $1,100.

The witness Hanna testifies that the work of plaintiff was created by a classification of work in the auditor's office and parceling to plaintiff a certain part of that work, and that now special assignment of the work is done away with, and it is done along with all the other work, and without separate classification. And Van Hosen says that it has been distributed among the various employees of the department. Mr. Hanna adds that the particular duties of Mr. Babcock have been transferred and done in a different room, in which the auditor and four clerks do their work.

In the last analysis, it is made manifest that the city found that, under a separation of work in one department, and assigning part thereof to plaintiff, it required five men to do all the work of that department; that, by abolishing a position to which part of this work was thus assigned, all of the work could thereafter be done by four persons; that, therefore, the position of the plaintiff was abolished, and all the work, including that which he had heretofore done, reassigned and transferred, so that it now is being done by four men instead of five, as theretofore, and that an annual saving in expenditure has resulted. We are unable to see how, by showing this, the plaintiff has proven that abolishing the position occupied by him was a mere subterfuge and pretense. There is nothing in the Soldiers' Preference Law, or any other law, which compels a municipality to do its business less efficiently and economically than it is able to. When a position exists, the honorably discharged soldier has preferential rights to filling it. There is no law

that commands that, when such position is once filled by him, the position must be maintained.

Had the four men now doing all the work and plaintiff each occupied the position of clerk of the record room, and, in reducing the force, four non-veterans been retained or put in, and were there proof that these four were less qualified than plaintiff, a different question would be presented. The question we have and decide is that, where a veteran alone occupies a position which is the subdivision of a department, and that subdivision is abolished, and all the work of the department transferred to others, there being no evidence of qualifications, absolute or relative, the veteran who filled that subdivision may not complain that others are doing the entire work of the whole department without his help.

The authorities cited for the appellee do not run counter to this, and in fact we fail to see that they have much bearing on anything involved here. The essence of *Kitterman v. Board of Supervisors of Wapello County*, 137 Iowa 275, is that, where an original appointment to be janitor was for an indefinite time, an arbitrary fixing a definite term, declaring a vacancy, and appointing another to fill it, is, in effect, a removal without compliance with the statutory provisions on the subject. Much of the opinion is devoted to the question whether the position of janitor of a court house is one to which the Soldiers' Preference Law applies, and it is held that it does apply thereto. The same case in 145 Iowa 25, sustains the appellant rather than the appellee. It is therein said:

"The fact that a soldier is employed to do work for the county creates no obligation upon the county to keep him upon its pay roll when that work is done and there is no longer any need of his services; but when the service is one of an indefinite or continuous character, the reasonable necessities of which require the employment of someone at all

times, and there is no statute designating or limiting the time for which appointment to such position may be made, we are not prepared to say that the board of supervisors can defeat the operation of the Soldiers' Preference Act by the expedient of dividing the time into 'terms.' By such plan the board is enabled to exercise an absolute power of removal, and Section 2 of the act, which provides that an honorably discharged soldier shall not be removed from such position except for due cause shown and after due hearing on formal and specific charges, is made of no practical effect."

After all, what the case deals with is where a position was confessedly retained, and someone other than a veteran, chosen to perform its functions by the expedient merely of arbitrarily declaring that the position had a fixed and definite term, and that such had expired. The same position was kept, the same work was kept on; the only change was that the soldier occupant was, in effect, dismissed, and someone put in his place. It was an arbitrary declaration that the term of the soldier appointee had expired. Then came, in effect, an arbitrary removal and a substitution. This is a far cry from holding that, under an employment which is paid for by annual appropriation ordinances, there may not be abolished one subdivision doing part of the work of a department, and the department required to perform all the work theretofore done in the abolished subdivision, that work being done as efficiently with less help and at less expenditure.

*Robertson v. Alberson*, 114 N. W. 885 (not officially reported), is, in effect, that the determination of the council that a veteran applicant was not equally qualified would not be interfered with where the good faith of the action is not impeached. *Boyer v. Mayor*, 113 N. W. 474 (not officially reported), holds that, upon the appointment of a nonveteran, on hearing, the appointing will not be set aside by

reason of the preference statute unless there is a clear showing of abuse of discretion. *Ross v. City Council*, 136 Iowa 125, at 127, merely determines that, while mandamus will lie to compel the appointing power to act, it will not control who shall be appointed when the council does act. *Thurber v. Duckworth*, 165 Iowa 685, holds, so far as it can have any possible bearing here, that, in an action for the reinstatement of a janitor in the state house, a discharge will not avail which was without hearing; that the requirement that there may be no discharge without it is constitutional; and that the Soldiers' Preference Law is constitutional.

The decree and judgment below is reversed, except so much thereof as judges that the reduction of salary made is justified.—*Reversed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.