NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellee, v. HANS BLOHM et al., Appellees; C. A. CAIRNS, Appellant.

No. 40363.

90

JANUARY 13, 1931.

REHEARING DENIED APRIL 10, 1931.

Stipp, Perry, Bannister, Starzinger & Little, for The Northwestern Mutual Life Insurance Company, appellee.

L. W. Powers, P. W. Harding, and W. E. Kahler, for Hans Blohm, appellee.

L. W. Powers, for Robert Ewall, Administrator, appellee.

Sims & Page and Davis, McLaughlin & Hise, for C. A. Cairns, appellant.

KINDIG, J.—Two mortgage foreclosure proceedings are involved and the cases were consolidated for the purposes of this appeal.

On February 26, 1921, Hans Blohm, and his wife, Lena Blohm, executed a note payable to Mary C. Cairns, or order, in the sum of $9,000, secured by a mortgage upon certain real estate in Crawford County. This note, under its terms, became due March 1, 1922. Said mortgage was recorded in the Crawford County Recorder's office on February 26, 1921.

Mary C. Cairns, the payee in the note, and mortgagee under the security agreement, died February 16, 1924. Before her death, however, she duly assigned the note and mortgage to her brother, C. A. Cairns, who is the plaintiff and appellant in the suit brought to obtain judgment against Hans Blohm, the above-named maker and mortgagor, for money due under the note, and foreclose the foregoing mortgage against him and The Northwestern Mutual Life Insurance Company, defendant in that suit and appellee here, which claimed a prior lien on the real estate concerned. Other defendants were named in that foreclosure suit, and they are appellees here. That is a brief description of one of the suits thus consolidated. Parenthetically it is here noted, for hereafter it will be important to know, that the appellant represented, and transacted business in Iowa for, his sister.

The other proceeding involves a note executed by the appellees, Hans Blohm and Paul Schnieder, under date of January 22, 1923, payable to the appellee, The Northwestern Mutual Life Insurance Company, in the sum of $14,500, and due in five years thereafter. Execution of the Insurance Company note and mortgage was made by the above-named Paul Schnieder because previous thereto he had agreed to buy the land in ques-

tion from Hans Blohm. A mortgage on the same land covered by the Cairns mortgage was given by the makers of this note on even date therewith to secure the Life Insurance Company thereunder. Thereafter, on March 15, 1923, this mortgage was recorded in the office of the Crawford County Recorder. So, the foreclosure proceeding brought by the Life Insurance Company is the second suit consolidated, as previously indicated. In that foreclosure proceeding, Hans Blohm, the appellee, Paul Schnieder, and others, together with the appellant, C. A. Cairns, were made defendants.

To more fully understand the issues, it is to be understood that: First, payment of the note secured by the Life Insurance Company mortgage not having been made when it became due, foreclosure suit was started by the payee, as already described; and, second, the appellant, claiming the Cairns note was not paid, also brought an action to foreclose the mortgage securing the same. It is claimed by the appellant that, as before said, the $9,000 note given to Mary C. Cairns has never been paid, and the mortgage securing the same is still unsatisfied. Hence appellant brought the above named foreclosure suit and urges that his mortgage is, as compared with the Life Insurance Company's mortgage, a first lien because prior in date and first placed upon the record. The entire controversy centers around the existence of the Cairns mortgage, as a lien on the real estate. Appellees argue that this mortgage was released of record May 2, 1923, before the assignment aforesaid under a written satisfaction piece purporting to be signed by Mary C. Cairns March 1, 1923, and on that date acknowledged by her.

Continuing their contention at this point, appellees maintain that regardless of the satisfaction piece, the Cairns mortgage was paid by those obligated thereon, and thereby rendered inoperative. Appellant, on the other hand, declares that the purported satisfaction piece was a forgery, and that the mortgage indebtedness had never been satisfied. For a better understanding of these conflicting claims, it is necessary to know the following additional facts. At the time the said mortgage was given to the appellee, The Northwestern Mutual Life Insurance Company, there were, so far as material here, three mortgages on the land, to wit, one for $9,500 to the Prudential Life Insurance Company, the Cairns mortgage above-named, and

another for $8,260 to B. W. Hunt. Hans Blohm, the debtor, procured the money represented by the mortgage to the appellee, The Northwestern Mutual Life Insurance Company, for the purpose of paying the mortgages held by The Prudential Life Insurance Company and Cairns. When interest and principal on those two mortgages are totaled, it is seen that the $14,500 procured from The Northwestern Mutual Life Insurance Company, even when added to the cash then held by Blohm, was not sufficient. So, in order to raise sufficient funds to liquidate the mortgages held by The Prudential Life Insurance Company and Cairns, Blohm borrowed an additional $4,000 from the Bank of Denison and gave a mortgage, to secure the same, on his residence in that city. By adding said cash belonging to Blohm and the $4,000 thus procured to the $14,500 previously obtained from The Northwestern Mutual Life Insurance Company, there was sufficient to satisfy the mortgages held by The Prudential Life Insurance Company and Cairns.

Believing that the Bank of Denison was the authorized agent of The Prudential Life Insurance Company and Cairns for the purpose of receiving payments of the respective mortgages, Blohm authorized the money borrowed by him, as aforesaid, delivered to that banking institution in order to satisfy the mortgages held by The Prudential Life Insurance Company and Cairns. After so doing, the before mentioned mortgage held by B. W. Hunt was released and a new mortgage for a like amount given on the land as junior to the $14,500 mortgage held by the appellee, The Northwestern Mutual Life Insurance Company. When that was done, Blohm and Schnieder, as well as the appellee, The Northwestern Mutual Life Insurance Company, understood that the latter's mortgage was a first lien on the real estate now in question. A chronological statement of the events leading up to this mortgage will confirm that fact.

Under date of September 2, 1922, Hans Blohm made application to the appellee, The Northwestern Mutual Life Insurance Company, for the $14,500 loan. Subsequently, on January 22, 1923, the note evidencing the indebtedness under the loan was executed by Hans Blohm and Paul Schnieder. As security for this note, the mortgage, beforesaid, to the appellee, The Northwestern Mutual Life Insurance Company was executed by Blohm and Schnieder on the same date. Accordingly, Hans

Blohm and Paul Schnieder signed a written order on January 31, 1923, directing the appellee, The Northwestern Mutual Life Insurance Company, to pay the proceeds of such loan to the Bank of Denison.

Next in the order of events is the satisfaction piece purporting to have been executed by Mary C. Cairns under date of March 1, 1923, releasing the Cairns mortgage. So, on March 10, 1923, the appellee, The Northwestern Mutual Life Insurance Company, in accordance with the aforesaid order of Blohm and Schnieder, drew a draft on the National Exchange Bank of Milwaukee, Wisconsin, for $14,500, payable to the Bank of Denison. On March 19, 1923, the Bank of Denison signed a memorandum acknowledging the receipt of the $14,500 check, and on the following day the check was endorsed by the bank and put into the process of clearing. Credit for the $14,500, plus the $4,000 borrowed from the bank, was given by that institution to Hans Blohm on the books of the bank. Thereafter, and near the same time, Blohm drew a check on his account (composed of money thus borrowed, together with said cash), payable to the Bank of Denison as the agents of The Prudential Life Insurance Company and Cairns, as before explained. Apparently the Bank of Denison, upon receipt of that money, duly paid the Prudential Life Insurance Company and gave credit on its books to Mary C. Cairns, but had not remitted the same to her when the institution suspended business and went into the hands of a receiver.

In addition to the foregoing, it is argued by appellees that the bank of Denison, from the year 1915 until it closed, was the general agent of Mary C. Cairns and the appellant, for the purpose of making and consummating loans and collecting the interest and principal due thereunder. Such power to collect, appellees declare, was vested in the bank regardless of whether the notes representing the indebtedness were in its possession. Contrary thereto, appellant insists not only that the foregoing release of mortgage was a forgery, but also that the Bank of Denison was not his agent or that of Mary C. Cairns. The only dealings that Mary C. Cairns or the appellant had with the Bank, the latter claims, were the purchases of mortgages. It is conceded, however, by appellant that the Bank of Denison had authority to collect the principal and interest on the mort-

gages thus purchased, when directed so to do. Those conflicting claims were presented to the trial court, and that tribunal found: ·

First, That the release of mortgage was not genuine and that the Bank of Denison was not the ostensible agent of Mary C. Cairns or appellant; and, second, that the Bank nevertheless was the agent of the said Cairns for the purpose of collecting the indebtedness due under the $9,000 mortgage held by the latter. Therefore, judgment was entered in favor of the appellees.

I. An argument is made by the appellant to the effect that this court cannot now consider the foregoing release of mortgage because the district court found the same invalid, and no appeal was taken from such finding by the appellees. This is true, appellant maintains, even though a judgment in favor of the appellees was finally entered in the district court. Here it is to be remembered, the appeal was taken by the appellant because the court below decided adversely to him. Nevertheless, appellant says that such judgment cannot be justified on those theories discarded by the district court. At this juncture appellant relies upon the following authorities: Christie v. Iowa Life Ins. Co., 111 Iowa 177; Judge v. Powers, 156 Iowa 251, and similar cases.

A study of those cases will reveal that the holdings therein are inapplicable to the facts in this record. Brief quotations from the cited cases will demonstrate the thought. We said in Judge v. Powers (156 Iowa 251), supra, reading on page 256:

"A judgment is the final and definite sentence or decision of the court by which the merits of a cause are settled or determined. Coffey v. Gamble, 117 Iowa 545. A finding of facts or conclusions of law by the judge during or after the trial of the case, or his opinion upon matters submitted, whether oral or in writing, does not necessarily constitute a judgment; 'it is not such a definite sentence or adjudication as is contemplated by that term.' * * * And the findings and judgment may be incorporated in the same instrument without affecting the validity of the judgment and without making the findings a part of the judgment proper."

Again in Christie v. Iowa Life Ins. Co. (111 Iowa 177), supra, there appears the following language on page 179:

"The trial judge filed with the clerk a finding of facts, with his conclusions of law, ending with the direction that judgment be entered. Whether this was sufficient in form as a decree need not be considered. It was never spread upon the records of court, and for this reason never became such."

From the foregoing statements in the Christie Case, the appellant draws the conclusion that this court intended to indicate that if the findings had been spread upon the record they would have become a part of the judgment. With that conception of the Christie case, we do not agree. As hereafter will appear, our holdings, with one exception, are to the contrary. The exception above-named may be found in Babcock v. City of Des Moines, 180 Iowa 1120 (l. c. 1123). For the sake of clearness, a quotation from the Babcock case is here set forth, reading on pages 1122 and 1123:

"'* * * the decree of the district court finds expressly:
" 'That the evidence in support of that part of the plaintiff's petition which complains of reduction of his salary, and charges that the same was had and done by the defendants in bad faith, and for the purpose of bringing about the resignation or discharge, is not sustained by the evidence.'
"The appellants, of course, do not complain of this finding, because, so far as it goes, it is in their favor. The appellee has not appealed, and is in no position to have this finding, or rather the decree upon such finding, set aside or disregarded. It therefore becomes the law of the case on this appeal, though the appeal is triable *de novo*; and we must find that the statute was not violated in reducing the salary of the plaintiff."

Manifestly that pronouncement is not in line with our many cases. All equity cases are triable *de novo* in this court. An appeal, therefore, brings up the entire record as duly contained in the abstract, or otherwise properly certified, and the case is here tried anew. If the judgment of the district court can be sustained upon any theory, the same may be done regardless of that court's findings. Clearly the party not appealing can obtain no advantage in this court which he failed to receive in

the district court, yet this does not mean that we, upon appeal, must affirm the district court only on the theory adopted by it. This court may sustain the district court regardless of its findings and theories. Alexander v. Buffington, 66 Iowa 360; Smith v. Knight, 88 Iowa 257 (l. c. 260); Van Gorden v. Schuller, 192 Iowa 853 (l. c. 856); Van Alstine v. Hartnett, 210 Iowa 999. Our language in the cases just cited will elucidate the proposition under consideration. During our discussion in the *Alexander* case, we suggested, reading on pages 361 and 362:

''If there is a good reason for the support of the decree (in the court below), it will not be reversed because it was based by the court below upon a bad one (reason).''

Likewise, this language appears in Smith v. Knight (88 Iowa 257), supra, reading on page 280:

''If, in the judgment of this court (the Supreme Court), from an examination of the entire record, the decree below was correct, it (the Supreme Court) will not reverse because of errors of the district court as to findings of particular facts.''

Later, in Van Alstine v. Hartnett, supra, we announced:

''Under the English chancery practice, a decree recited substantially all of the proceedings upon which the decree was based, including the pleadings and evidence or findings (21 Corpus Juris 655); but the modern doctrine is that mere findings or conclusions of law have no place in a judgment. They may be incorporated in the same instrument without affecting the validity of the judgment. * * * In the case of Judge v. Powers, 156 Iowa 251, l. c. 256, we discussed this question, and held that: '* * * the findings and judgment may be incorporated in the same instrument without affecting the validity of the judgment and without making the findings a part of the judgment proper.' We again had this question before us in Van Gorden v. Schuller, 192 Iowa 853, l. c. 857, where this question was elaborately discussed, and it is said: 'Now the recital or findings of fact by the court is not a final judgment or decision; it is not a decree; it is not an order; it fits into none of the statutory definitions of things appealable. * * * The decree, properly speaking, includes only that part of the court's final pronouncement which adjudicates and determines the issues in the case

and defines and settles the rights and interests of the parties so far as they relate to the subject-matter of the controversy. If the court goes further, and sets forth the reasons which have influenced its decision, such statement or opinion is not an essential part of the decree.' "

When appealing to this court, the judgment, and not the findings, is of prime importance; that is to say, the appeal is from the judgment and not the findings. In such case the appellee protects the judgment, and the appellant attempts to cause its reversal. Then, when the judgment is in favor of the appellee, he does, and can, not appeal. Under no circumstances do the parties appeal from the findings, as distinguished from the judgment. So, when an appeal in an equity cause is taken to this court, we consider the case *de novo,* and this is done regardless of the findings upon which the judgment is based. Here the judgment may be sustained on different findings of fact than those made by the district court. Many facts discarded by the district court may be accepted by this tribunal to sustain or reverse the judgment below.

Although the district court found in the case at bar that the Cairns mortgage was not released, nevertheless here on this appeal *de novo,* in order to sustain the judgment, we may consider that the instrument was satisfied of record. Therefore, so far as the case of Babcock v. City of Des Moines (180 Iowa 1120), supra, is in conflict with the principle here announced, the same is overruled.

II. Next the question for decision is,—was the Cairns mortgage released, as claimed by appellees? If it was thus satisfied, of course, the same no longer incumbers the real estate, and appellants' application for a foreclosure thereof under such circumstances must be denied. The Northwestern Mutual Life Insurance Company, appellee, in its petition set forth a copy of the release, and relied thereon to sustain its action.

Appellant, when answering appellees' pleading, purported through his attorney to deny the signature of Mary C. Cairns on the release. Said attorney, and not appellant, took the oath that he has "no knowledge or information sufficient to enable him to form a belief as to the genuineness of such signature." Because of the denial under oath aforesaid, appellant now claims that the burden of proving the genuineness of the signature was

cast upon the appellees. This, he says, is brought about by the following statutory provisions contained in the 1927 Code:

"Section 11218. When a written instrument is referred to in a pleading, and the same or a copy thereof is incorporated in or attached to such pleading, the signature thereto, and to any indorsement thereon, shall be deemed genuine and admitted, unless the person whose signature the same purports to be shall, in a pleading or writing filed within the time allowed for pleading, deny under oath the genuineness of such signature."

"Section 11219. If such instrument is not negotiable, and purports to be executed by a person not a party to the proceeding, the signature thereto shall not be deemed genuine or admitted, if a party to the proceeding, in the manner and within the time before mentioned, states under oath that he has no knowledge or information sufficient to enable him to form a belief as to the genuineness of such signature."

Appellees declare that the denial attempted by appellant is not sufficient to give rise to the foregoing statutory provisions. Assuming, however, without deciding, that the denial in that respect is adequate, we are of the opinion nevertheless that after the acknowledgment accompanying the release was introduced in evidence, the duty of going forward with the evidence was then cast upon appellant. That is true because the release was acknowledged before a notary public who duly certified such fact, and the certification is in due and regular form.

Unless, then, the appellant has overcome the facts affirmed in the certificate of acknowledgment by clear, satisfactory, and convincing evidence, the same must stand as true. Morris v. Sargent, 18 Iowa 90 (l. c. 95); Bailey, Wood & Co. v. Landingham, 53 Iowa 722 (l. c. 724); Bird v. Adams, 56 Iowa 292; Herrick v. Musgrove, 67 Iowa 63 (l. c. 65); Swett v. Large, 122 Iowa 267 (l. c. 271); Johnston v. Linder, 168 Iowa 441; Vanderveer v. Warner, 191 Iowa 1106; Hutchins v. Jones Piano Co., 209 Iowa 394. In the Hutchins case, last named, we declared:

"Certification (in the *Hutchins* case) of the notary is in due and regular form. Hence, the burden was upon appellee to prove his contention (that the acknowledgment was not taken) by clear and convincing evidence. Great weight is given to the certificate of acknowledgment * * * (citing cases). The notary

public who misstates the material fact in the certificate shall be liable for damages, and guilty of a misdemeanor. An officer is presumed to obey the law and perform his official duty. Roberts v. Roberts (176 Iowa 610), supra. Therefore, presumption is in favor of the acknowledgment.''

Under the statutory provisions aforesaid, the signature alone is affected. When the signature is denied under oath, as required by the foregoing statutory provisions, the burden of going forward with the evidence is then cast upon the opposing party. But that presumption does not relate to the execution of the instrument as distinguished from the genuineness of the signature. Perhaps, in a given case, a signature on a document may be a forgery, yet thereafter the one whose signature was thus forged may adopt the provisions of the forged instrument as his own and appear before a notary public and duly acknowledge the same. McColl v. Jordan, 200 Iowa 961 (l. c. 966). So, even though a denial of a signature under oath, as permitted by the statute, may cast upon the opposing litigant the burden of going forward with the evidence to establish the genuineness thereof, yet this situation does not mean also that the duty of going forward with the evidence relating to the instrument's execution is likewise imposed upon such party when the same is duly acknowledged. Concerning this subject-matter, quoted excerpts from two of our former opinions will enlighten the reader. It was said in Gribben v. Clement, 141 Iowa 144, reading on page 153:

''The defendant denied only the genuineness of her signature. That of itself would not defeat her liability on the mortgage. She did not deny that she had appeared before a notary public and acknowledged the execution of the instrument in the manner certified to by him; and, if she had made such denial, it would not of itself necessarily, be sufficient to overcome the weight of such certificate. If she acknowledged the instrument before the notary public, it was quite immaterial whether her name was put to it by her own hand or by the hand of another.''

Likewise we declared in Currier v. Clark, 145 Iowa 613, reading on page 617:

"So far as the mortgage was concerned, the certificate of acknowledgment was sufficient proof of its due execution by the acknowledging parties. It was not essential to its validity that their names should have been signed in their own handwriting. If they adopted the signatures, by whomsoever made, and acknowledged the instrument, it was a valid instrument. The certificate of the notary in such a case will not be lightly overcome."

All titles would be in jeopardy if this were not true. Instruments that have been duly acknowledged and filed for record cannot be lightly set aside. Public policy makes that necessary. Young v. Duvall, and another, 109 U. S. 573 (3 Supreme Court Reporter, 414).

Therefore, it is now important to consider the evidence offered by appellant to overcome the representations of the certificate. The reader's attention is again here called to the fact that Mary C. Cairns died February 16, 1924, but before her decease she assigned her interest in the $9,000 mortgage to the appellant. Also before her death, the said Mary C. Cairns is alleged to have executed the satisfaction piece before mentioned, which, so far as material, is in the following language:

"Full payment and satisfaction is hereby acknowledged of a certain Real Estate Mortgage, dated the 26th day of February, A.D. 1921, made and executed by Hans Blohm and wife to Mary C. Cairns * * *

"Witness my hand this 1st day of March, A.D. 1923.

"Mary C. Cairns."

And the foregoing instrument was purported to have been duly acknowledged before A. H. Damert, a notary public in appellant's office at Chicago, Illinois. Attached to the instrument is the certificate of the notary, in due form. Being dead, of course Mary C. Cairns could not give her version of the transaction. No one testified against the truthfulness of the notary's certificate, except appellant, who, so far as material, said:

"Mary C. Cairns * * * died February 16, 1924. I attended to Mary C. Cairns' business for her. If any instruments were to be executed by her, I attended to taking her before the proper officer for that purpose. I never at any time received a request

from Voss or Kuehnle & Voss or the Bank of Denison for a release of the Hans Blohm mortgage in controversy here. I never at any time received a request from any of them to deliver the Hans Blohm note or the mortgage securing the same. I did retain the original notes and mortgages which I have identified here in my possession * * * No request was ever made for a release, and I never did procure a release covering that mortgage. There never was any correspondence between Voss, the Bank of Denison or Kuehnle & Voss and myself relative to a release of this Blohm mortgage. It was after the bank closed that I first learned there had been a purported release of this mortgage filed here. Mary C. Cairns, my sister, never handled any matters at all with Voss or Kuehnle & Voss or the Bank of Denison, absolutely not. She would not have gone of her own accord and attended to any of this business without consulting me. * * * Whenever my sister would execute an instrument that required acknowledgment, I would take her before a notary public and accompany her while she made the acknowledgment. I absolutely did not go before Mr. Damert or any other notary with my sister on March 1st, 1923. Mr. Damert (the notary public who certified to the acknowledgment on the release) is an employee of our company in my office.''

When taken together with all the facts and circumstances revealed by the record, we cannot say that the foregoing proof is so clear, satisfactory, and convincing as to support a finding that the notary's certificate on the acknowledgment is false and untrue. Putting the thought differently, appellant has not met the burden of proof cast upon him to overcome the statements contained in the notary's certificate. By way of sustaining the certificate, it is material to note:

First, that Mr. Voss, connected with the Bank of Denison, sometimes went to Chicago where Mary C. Cairns lived.

Second, according to the record, Mary C. Cairns executed a release of a different mortgage near the time the present satisfaction is purported to have been made.

Third, The notary public, Damert, who is alleged to have taken the acknowledgment of Mary C. Cairns on the release in question lived in Chicago and worked in an office under the appellant. For some reason, unexplained, that notary was not called to testify in this case. He did not deny that the acknowl-

edgment was taken by him. Neither did appellant call upon this notary public to deny the genuineness of the certificate. That is a strong circumstance tending to overcome appellant's testimony above set forth. Obviously Mary C. Cairns might have gone before this notary public when appellant was not present. Apparently she did not customarily do so, and it seems that appellant did not expect her to acknowledge an instrument without his request. Nevertheless there are exceptions to all rules, and in the face of the solemn certificate of the notary public, we cannot say, under the circumstances that she did not make the acknowledgment, and

Fourth, some additional corroboration may be found in the fact that the Hans Blohm $9,000 mortgage was past due. The Bank of Denison was trying to collect the same, and the mortgage now held by the appellee, The Northwestern Mutual Life Insurance Company was procured by Blohm in order to raise funds with which to pay this indebtedness. Quite naturally, then, Mary C. Cairns, who held the mortgage, would execute a release under some arrangement suitable to her in order that the transaction with the appellee, The Northwestern Mutual Life Insurance Company, could be completed. Within the purview of the entire record, therefore, we are constrained to hold that the appellant has not overcome the presumption raised by the certificate of acknowledgment on the release. Without evidence sufficient to overcome the allegations contained in the notary's certificate, we must, and do, hold that the satisfaction piece under consideration is valid, and therefore the $9,000 mortgage held by appellant has been duly released of record.

III. According to the arguments of the contesting parties, it is apparently assumed on both sides that, the validity of the foregoing release being established, not only the appellee, The Northwestern Mutual Life Insurance Company, must succeed in this litigation, but likewise the other appellees are entitled to prevail herein. In other words, appellant does not argue that he is entitled to a judgment against Hans Blohm, or any other person liable on the Cairns mortgage, even though the instrument has been released of record. We do not now decide or suggest that the release of the mortgage did not satisfy the indebtedness secured thereby.

However that may be, it is apparent under the record

that the indebtedness secured by the Cairns mortgage was fully paid when Blohm used the proceeds received from The Northwestern Mutual Life Insurance Company mortgage to satisfy the same. Blohm, it is recalled, paid to the Bank of Denison those proceeds, together with others in that institution for the purpose of satisfying the Cairns mortgage and the one held by The Prudential Life Insurance Company. Manifestly, under the record, including the many exhibits certified for inspection, the Bank of Denison was the agent of Mary C. Cairns. It is not necessary to go into the facts extensively here because of our discussion in reference to the certificate of acknowledgment, but it appears that since the year 1915 until the Bank closed, that institution conducted an extensive business for appellant and his sister, as previously shown. Appellant contends that he simply purchased mortgages of the bank, and that there was no other relationship. Clearly, that is not the true situation. Not only did appellant and his sister purchase mortgages from the Bank of Denison, but in addition thereto, the Bank was authorized to collect both principal and interest on those mortgages; for instance, the appellee, Blohm, in the case at bar had no direct communication or transactions with appellant or his sister until after the Bank of Denison closed. Although the Blohm mortgage was past due, appellant in no way communicated with that debtor except through the Bank of Denison. All transactions in reference to this $9,000 mortgage were carried on by the bank and its officers. Hence, it was at the instance of the Bank of Denison that Blohm procured the mortgage from the appellee, The Northwestern Mutual Life Insurance Company. Frequently collections of principal and interest under other mortgages were made by the bank when the particular note and mortgage securing the same were in Chicago, in the possession of appellant. C. L. Voss, a representative of the Bank of Denison, testified:

"Quite frequently the collections (of principal and interest for appellant) were made before the papers were received. Frequently principal was collected by the bank on other loans of Cairns although the bank didn't have the note. When the principal had been so collected, it was usually remitted to Mr. Cairns. I suppose Cairns knew about those transactions, at least, we wrote him about them. I think frequently we made collections

and remitted to Mr. Cairns, and no correspondence about it. I don't recall any objection by Mr. Cairns to the bank collecting principal, although it didn't have the original notes. That custom had been going on for several years."

On cross-examination this is somewhat modified, but not entirely overcome, and sufficient substantiation for the foregoing testimony may be found in the evidence of other witnesses and the many exhibits previously mentioned. While the record in the case at bar does not disclose direct evidence supporting the agreement giving rise to this extensive agency, yet the conduct of the parties themselves indicates the existence of such broad representative power. A payment of a note and mortgage by the mortgagor to the mortgagee's alleged agent is at such debtor's risk when said creditor, rather than his representative, has possession of the papers, yet, if the agent in fact had authority to receive the payment, the obligation will be discharged. Whitney v. Krasne, 209 Iowa 236, and other cases therein cited.

Furthermore, consideration must be given to the language of the release executed by Mary C. Cairns before the notary public above named. That instrument contains the following language: "Full payment and satisfaction (of a certain real estate mortgage made and executed by Hans Blohm and wife to Mary C. Cairns) is hereby acknowledged."

There is ample support under the record for the findings made by the district court to the effect that the mortgage had been fully paid to appellant and his sister through their agent, the Bank of Denison. Whitney v. Krasne, supra.

Wherefore, the judgment and decree of the district court should be, and hereby is,—Affirmed.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT, DE GRAFF, WAGNER, MORLING, and GRIMM, JJ., concur.