B. B. DOUGLAS, Appellee, v. CITY OF DES MOINES et al., Appellants.

JUNE 26, 1928.

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, George W. Vest,* and *Don G. Allen,* for appellants.

*E. S. Thayer,* for appellee.

KINDIG, J.—This controversy involves the Soldiers' Preference Law, as contained in Chapter 60 of the 1924 Code. Section 1159 thereof reads as follows:

"In every public department and upon all public works in the state, and of the counties, cities, towns, and school boards thereof, including those of cities acting under special charters, honorably discharged soldiers, sailors, marines, and nurses from the army and navy of the United States in the late Civil War, Spanish-American War, Philippine insurrection, China relief expedition, or war with Germany, who are citizens and residents of this state, shall, except in the position of school teachers, be entitled to preference in appointment, employment, and promotion over other applicants of no greater qualifications."

Appellee, as plaintiff below, bases his cause of action upon that section, claiming that on the 13th of July, 1923, he was duly appointed and employed as a police officer of the city of Des Moines, and thereafter served and received compensation as such until about the 19th day of April, 1926, when he was removed from his position, in violation of Section 1163 of the same chapter, which provides:

"No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari."

To accomplish this "review," appellee made application for and obtained the allowance of a writ of certiorari from the trial court, directed to the appellants, the city and officers thereof, commanding that they make return of their doings in the premises. After hearing in that court, the writ was sustained, and the cause comes here by appeal therefrom. For return to that writ, appellants, in due time, made the following showing in the district court: That the appellee, Douglas, who had a defective and useless right arm, was originally permitted to do police department work as an extra special, from July 13, 1923, to September 15, 1924, as an assistant in the traffic regulations. On

November 1, 1924, he was allowed to help in the police department as an emergency assistant, continuing as a special extra until March 15, 1925. Then, on September 15th of that year, appellee was again permitted to help out in emergency, and served as bulletin clerk until November 15, 1925. Following some intermission, he was again employed, November 15, 1926, as a special member of a patrol crew, until April 30, 1927; at which time he was retired, for the ensuing reasons:

" * * * 2. The emergency causing his employment had passed. 3. Our [the city's] appropriation for the current year would not allow the employment of special help. 4. Douglas was never a regular member of the Des Moines police department. He never passed a civil-service examination. He never contributed to the pension fund. He has the misfortune to have a crippled arm, and is not physically qualified for police duty. His physical condition has been the same throughout his entire period of connection with the Des Moines police department."

At the trial, additional evidence was introduced by appellee, to show that: First, he was not employed as an emergency officer; second, no complaint was made about his services, but, on the other hand, he was complimented for his efficiency; third, while appellee never took the civil-service examination, yet he wore a civil-service policeman's badge; fourth, no notice was given of the contemplated discharge, nor was any hearing permitted in reference to the city's right so to act; and fifth, the city has other employees who have not passed the civil-service examination. Such were the issues upon which the case was tried, and we are now called upon to investigate the errors alleged to have been committed by the district court.

I. Appellants contend that the first mistake made at the trial was the admission of additional evidence on behalf of the appellee, supplementing the writ. Their argument is that the dispute is to be decided entirely upon said "return." With this thought, however, we are compelled to disagree. *Butin v. Civil Service Com.*, 179 Iowa 1048. Under certain conditions, further testimony may be introduced; for, as said in the *Butin* case, supra, it is the intent of the act "to permit the reviewing court to consider anything which legitimately bore on whether the discharge was for any reason wrongful; * * * "

II. Fundamentally, the "Preference Statute" (Section 1159, supra) contemplates competition between two applicants: that is to say, an honorably discharged soldier, on the one hand, and a non-soldier, on the other. Without such situation, that legislative enactment has no application. Before us is not a demand for an appointment to a position, within the scope of that section of the Preference Act; for appellee here does not ask to be employed or promoted "over other applicants of no greater qualifications."

III. Consequently, the only portion of the "Soldiers' Preference Law" having to do with the instant legal quarrel is Section 1163, supra, relating to the removal from office. Manifestly, there is more embraced within the present status of affairs than a mere question of discharge for "incompetency or misconduct," dealt with in that section. Rather than this limited reason (the statutory ground of incompetency or misconduct) for the discontinuance of appellee's services, the appellants were confronted with two barriers, preventing or making unwise his further employment. These are: First, the "emergency causing his employment had passed," thus making the abolition of the office necessary; and second, the city's "appropriation for the current year would not allow the employment of special help."

Soldier preference, as enacted by our legislature, does not prevent the abolishment of an office, nor does it demand, under the circumstances here revealed, the employment of a policeman or other official when the city treasury will not permit, or public economy allow. *Babcock v. City of Des Moines*, 180 Iowa 1120.

IV. There is no evidence in the record to dispute appellants' return to the writ, so far as it relates to the depleted treasury. Hence the result of the trial court's decision is a command to the city of Des Moines to retain appellee upon its pay roll, even though there be no funds with which to compensate him. In *Babcock v. City of Des Moines*, supra, we said:

"There is nothing in the Soldiers' Preference Law, or any other law, which compels a municipality to do its business less efficiently and economically than it is able to. When a position exists, the honorably discharged soldier has preferential rights

to filling it. There is no law that commands that, when such position is once filled by him, the position must be maintained.''

V. Likewise, in the case at bar appellee had no absolute right to demand that the city continue his position of special service. If the reasons which gave rise to the creation thereof cease to exist, or, in the interests of economy and good business administration, it seemed wise to have those duties formerly performed by him now terminated, or imposed upon others (resulting in the discontinuance, and, in effect, the ''abolishment'' of the office or position), the ''Soldiers' Preference Law'' does not prevent appellants from taking such step.

During the trial in the district court, appellee sought to show that he was not employed as an emergency officer. Conceding that such be true, nevertheless, according to the return and the testimony of appellee's own witness, he was employed as a special officer. John MacVicar, the witness just mentioned, was the man who hired appellee for the city, and while testifying, he said: ''We appointed him, as was customary, in the nature of a special officer.'' And the fact that appellee was permitted to wear a regular service policeman's badge, as distinguished from a special officer's insignia of that kind, does not alter the situation. Furthermore, the truth, if it be such, that there are now other employees working for the city who have not taken the civil-service examination cannot change the result, for there is no showing that those other men are filling appellee's position, or that he has a right to oust them from their places. Lack of good faith on the part of appellants does not appear.

Section 1162 of the 1924 Code embodies these words:

''A refusal to allow said preference, or a reduction of the salary for said position with intent to bring about the resignation or discharge of the incumbent, shall entitle the applicant or incumbent, as the case may be, to maintain an action of mandamus to right the wrong.''

Mr. Douglas, the appellee, has not produced a record upon which we are justified in saying that the last quoted section of the law has been violated. Integrity and good intentions apparently ruled appellants, and induced them to conduct them-

selves as they did in the interests of economy and good government. About this appellee has no just cause to complain.

VI. Apparently as an afterthought, appellee cites the recent case of *Engstrand v. Gilman* (Iowa), 215 N. W. 657 (not officially reported), and seeks to come under the holdings thereof, relating to employees who have rendered long and efficient service. It is enough to say that this was not the basis of appellee's action. In fact, his whole cause is predicated upon the Soldiers' Preference Law. That was the position taken by him in the court below, and he cannot change front at this late date.

Wherefore, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.