JOHN E. DICKEY, Appellee, v. GEORGE M. KING et al., Appellants.

No. 42947.

DECEMBER 17, 1935.

REHEARING DENIED MARCH 20, 1936.

F. T. Van Liew, City Solicitor, and C. I. McNutt, Assistant City Solicitor, for appellants.

H. W. Hanson and Thad C. Jones, for appellee.

MITCHELL, J.—John E. Dickey was employed as a clerk in the department of streets and public improvements of the city of Des Moines early in April of 1932, and continued in that position until the time he was discharged on the 14th day of April, 1934.

Dickey was an honorably discharged soldier, and came under the provisions of the Soldiers' Preference Law. He filed a petition for a writ of certiorari, and the matter came on for hearing before the district court, who sustained the petition and reinstated Dickey to the office he had held, entering judgment for the amount of wages which he was receiving at the rate of $5.90 per day, from the time of his discharge, and the costs of this action.

The city of Des Moines and its officials, being dissatisfied, have appealed to this court.

We must turn to the record to ascertain the facts.

That John E. Dickey is a resident of the city of Des Moines, an honorably discharged soldier of the war with the Imperial German Government, that he was employed by the city of Des Moines on or about the 1st of April, 1932, and remained as an employee of the city until April 14, 1934, is conceded by the appellants. It is the contention of the appellants that Dickey was employed as a clerk in the street department and that he was assigned to the position of assessment clerk in the special assessment division of the engineering department; that, due to the shrink in income of the city, the work of this department did not necessitate appellee's retention, and he was discharged by George M. King, superintendent of the department, without a hearing or without charges having been preferred against him.

It is the contention of the appellee that he was employed in the engineering department; that part of the work he performed during that period of time was making out special assessment schedules, but that he also performed other work. There were fourteen clerks employed during Mr. MacVicar's administration, and, when Mr. King took office, only thirteen were employed, nine of whom were new employees, persons who had not previ-

ously worked there and were employed after Dickey had been discharged.

The Legislature of this state saw fit to pass what is known as the "Soldiers' Preference Law," section 1159 of which is as follows:

"1159. Appointments and promotions. In every public department and upon all public works in the state, and of the counties, cities, towns, and school boards thereof, including those of cities acting under special charters, honorably discharged soldiers, sailors, marines, and nurses from the army and navy of the United States in the late civil war, Spanish-American war, Philippine insurrection, China relief expedition, or war with Germany, who are citizens and residents of this state, shall, except in the position of school teachers, be entitled to preference in appointment, employment, and promotion over other applicants of no greater qualifications."

The appellee comes squarely under the provisions of this law. He enlisted in the Army of the United States during the war with the Imperial German Government, and, when the necessity for his services had terminated, he received an honorable discharge. He is a citizen and resident of the state of Iowa, and therefore "entitled to preference in appointment, employment and promotion over other applicants of no greater qualifications." The position which he was holding was one that comes within the provisions of section 1159 of the Code. He was employed in the engineering department of the city of Des Moines as a clerk, in 1932, and served in that position until April of 1934. As far as this record shows, he served faithfully and well; at least no complaint is made. On the 13th day of April, 1934, appellee received the following letter:

"Mr. J. E. Dickey, City Hall, Des Moines, Iowa.

"Dear Sir: You are hereby notified that your services will no longer be required after April 13, 1934.

"Yours very truly,
"[Signed]          Geo. M. King,
"Supt. Streets & Public Improvements."

Section 1163 of chapter 60 is as follows:

"1163. Removal—certiorari to review. No person hold-

ing a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari.''

Dickey, being one of these in the favored class that comes under the Preference law, was entitled, before removal, to have charges filed against him, notice given, and a hearing held. There is no claim here of incompetency or misconduct. The city of Des Moines and its officials did not prefer charges against the appellee, and no hearing upon due notice was ever given him. He received the above-quoted letter, and that is all.

It is the claim of the appellants that the office of assistant special assessment clerk was abolished, and on that account it was not necessary to prefer charges against him, give notice, and have a hearing.

This court has held in the case of Babcock v. City of Des Moines, 180 Iowa 1120, at pages 1129, 1130, 162 N. W. 763, 766:

''There is nothing in the Soldiers' Preference Law, or any other law, which compels a municipality to do its business less efficiently and economically than it is able to. When a position exists, the honorably discharged soldier has preferential rights to filling it. There is no law that commands that, when such position is once filled by him, the position must be maintained.''

At page 1123, this court said:

''The statute prohibits reducing compensation with intent to bring about resignation or discharge, and so far as its terms go, stops there; that is to say, it does not in words prohibit the bringing about a discharge by the agency of an abolition of place made in bad faith to work a discharge. But the statute is highly remedial, and intended to give special and deserved privileges to one class of our citizens, in consideration of services rendered the country in time of need. We should construe it, when within reason possible, so that its evident purpose may be accomplished. So construing, we hold that a bad-faith abolition, intended to bring about the discharge of one within the Soldiers' Preference Law, is within the spirit of that law, and prohibited by it. If a city that had, through its officers, expressed ill will

towards an employee, and so declared an avowed purpose to accomplish his resignation or discharge, should one day abolish the position occupied by that employee, and the next day recreate it and fill it with some one not within the Soldiers' Preference Law, not more competent than the former and soldier employee, and should pay the new incumbent of the re-created position a larger compensation than had been paid before, no one should contend that the mere going through of the ceremony of abolishing the place or office would avoid the law. The supposed is an extreme case. Others differing in degree only may present an abolition that the law condemns. The vital questions, then, are whether the position occupied by the plaintiff was abolished, and, if so, whether the abolition was in bad faith and made with intent to force the discharge of the plaintiff.''

The question which confronts us in this case is, ''Was the office that this ex-soldier was holding, abolished?'' If it was abolished in good faith and not merely for the purpose of discharging this employee, then he has no complaint. The law in this state recognizes the rights of city councils to discharge an employee, even an ex-soldier, who comes under the protection of the Soldiers' Preference Law, when the reason for his employment ceases to exist. See Douglas v. City of Des Moines, 206 Iowa 144, 220 N. W. 72; Babcock v. City of Des Moines, 180 Iowa 1120, 162 N. W. 763. To hold contrary to the doctrine laid down in these cases and herein quoted would mean that, because a man was an honorably discharged veteran, the city would be required to keep him on its pay roll even though there were no duties for him to perform or money with which to pay him. The appellee in the case at bar was employed in the engineering department. True, a great deal of his work was that of a clerk in what was known as the special assessment division, but he did other work. This is conceded by the city and its officials. There is no evidence here to show that this soldier was not perfectly capable of handling any of the other thirteen jobs in this-department as clerk. Mr. King, the man who discharged appellee, testified: ''There is no reason why a clerk could not be transferred from one branch of the work to another except as a matter of qualification.'' This record shows that there have been replaced nine clerks in this same department from which appellee was discharged. And yet, in face of the fact that appellee comes di-

rectly under the Soldiers' Preference Law, he was discharged without notice, without any charges being preferred against him, and some nine others have been employed in this same department, doing the same kind of work that appellee was doing and which he was perfectly capable of doing, according to the undisputed record. To say that one clerk could be discharged without complying with the Soldiers' Preference Statute, without hearing and without charges being preferred against him, and nine others could be employed in the same department to do the same kind of work which he was qualified to do, would in effect be to nullify the Soldiers' Preference Law, which the Legislature of this state saw fit to write upon the statute books. The position which this appellee held was not abolished. All that happened was that one clerk was discharged, and that clerk happened to be the appellee. He was but a mere clerk in the engineering department. True, he did a great deal of work in the special assessment division, but, in addition to this, he did other work directed by his superiors. There is one less clerk employed in that department than there was prior to appellee's discharge, but there have been added nine new clerks who have taken the positions of other clerks in that department. As far as this record shows, this appellee was as well qualified to fill any one of these nine appointments as were the new men that were employed. In addition to this, he came squarely under the provisions of the Soldiers' Preference Law, and he was entitled to have charges preferred against him, notice given, and hearing held before, under the statute, he could be discharged. No charges were preferred against him, no hearing was had, and, under the law of this state, the appellants had no right to discharge appellee. The lower court was right in holding that appellee should be reinstated.

The judgment entered in this case allowed the appellee the sum of $5.90 per day from the day that he was discharged. In the petition for the writ appellee asked only for $5.40 per day. We find no place where there is any claim that he was receiving the sum of $5.90 per day. How this amount happened to get into the final judgment of the lower court we do not know. Upon this record all that appellee is entitled to is the sum of $5.40 per day from the time he was discharged. Judgment and decree of the lower court will be modified and changed, allowing

1328

the appellee the sum of $5.40 per day from the date of his discharge.

With this modification the judgment and decree of the lower court must be, and it is hereby, modified and affirmed.

KINTZINGER, C. J., and PARSONS, ANDERSON, DONEGAN, and HAMILTON, JJ., concur.