Clarence W. Neargard, Appellee, v. Chet B. Akers, Auditor of State, Appellant.

No. 45614.

September 29, 1942.

Rehearing Denied March 12, 1943.

John M. Rankin, Attorney General, and Floyd Philbrick, First Assistant Attorney General, for appellant.

H. O. Keeley, of Maquoketa, J. R. McManus, and M. H. Johnson, both of Des Moines, for appellee.

BLISS, J.—This case was tried in connection with Warner v. Akers, 232 Iowa 1348, 5 N. W. 2d 603, and Klatt v. Akers, 232 Iowa 1312, 5 N. W. 2d 605, and in part upon the same testimony. While the records in the three cases, both in the trial court and in this court, are substantially the same in many respects, there are particular matters in this case to which we call attention.

Plaintiff was employed by the defendant's predecessor, in August 1934, as a junior or assistant examiner, as authorized by Code section 115, and worked in that capacity for about two years, when he was made a senior examiner under Code section 114. During the early part of his employment, he worked in both municipal and school audits. Thereafter he worked solely on municipal audits, until in November 1938, when he was given a school-auditing assignment in Wapello county, and worked on that assignment until February 2, 1939. He did no work as an examiner after that date.

. In his petition plaintiff alleged: that for several years prior to February 2, 1939, he had been in the employ of the auditor of the state as a senior examiner; that he was an honorably discharged soldier entitled to the protection and rights extended to such soldiers by chapter 60 of the Code of 1935; that on the date above mentioned he was unlawfully discharged from said position, without a hearing upon notice and stated charges, in violation of Code section 1163. He prayed for judgment ordering his reinstatement as senior examiner with damages at the rate of $7 per day from the 2d of February 1939 to the date of his reinstatement.

Defendant, by amended and substituted answer, admitted

his official capacity, and the employment of plaintiff as senior examiner for the period alleged, at a per diem of $7 for each day he worked. The other allegations of the petition were denied. As other defenses the defendant alleged: (1) that the position held by plaintiff, as alleged, had been filled by another who performed its duties and services and was paid therefor, and plaintiff, not having performed these services, could not enforce payment therefor from the defendant or the State of Iowa; (2) that, as senior examiner, the plaintiff had at all times been employed in municipal and school audits, and early in the session of the Forty-eighth General Assembly, which convened on January 9, 1939, the optional-audit bill, known as Senate File No. 2, was introduced, the purpose of which was to amend the existing law as to the auditing of cities, towns, and schools by making it optional with them whether the audits be made by examiners from the auditor's office or by certified public accountants, thereby greatly reducing the need of the auditor's examiners, and in effect abolishing the positions of plaintiff and other municipal and school examiners by depriving them of work; (3) that plaintiff could not sue the State of Iowa on such a claim without its consent and no consent had been given; (4) that certiorari was not a proper proceeding for the recovery of damages as sought by plaintiff; (5) that the position was of a strictly confidential nature and was therefore not within the provisions of the Soldiers' Preference Law, chapter 60 of the 1935 Code; and (6) that under said chapter 60, plaintiff is not entitled to recover compensation or damages.

On this appeal appellant has assigned errors because of adverse rulings and judgment of the court with respect to the numbered defenses above set out.

In his reply appellee, in addition to denials of the various defenses set out in the substituted answer, alleged additional matters in support of the allegations of his petition.

The trial court rendered judgment for the appellee on June 29, 1940, ordering the appellant to immediately reinstate him as a senior examiner, and for damages to date of judgment in the sum of $2,275, being at the rate of $7 per day for every working day, less the sum of $530, which the appellee earned at other

work. Judgment was rendered for an additional sum at the same rate per diem until appellee's reinstatement. There is no support for the finding that the appellee would have worked every working day, as will hereinafter appear.

I. There is little, if any, controversy over material facts. Appellee is an honorably discharged soldier. No notice was given appellee of any charges against him, nor was any hearing had. Prior to the session of the Forty-eighth General Assembly, it was compulsory upon cities, towns, and school districts that their accounts be audited by examiners from the office of the auditor of state. There had been much complaint of the excessive cost of these audits to the taxpayers. Shortly after the legislature convened on January 9, 1939, the so-called "optional audit bill" was introduced in the senate, which permitted the public body to have the audits made by the auditor's office as theretofore or to have it done by certified public accountants registered in the state. The auditing of certain municipal and school corporations was also made optional with those interested. The bill was passed and became effective about the 1st of April 1939. It was apparent from the time of the introduction of the bill that if it became a law, it would in all probability not only greatly reduce the number of examiners needed for municipal and school audits but would make it very uncertain as to how many examiners should be kept available.

When the appellant took office at the first of the year 1939, there were forty-four examiners in the department of cities, towns, and schools. Of this number twenty-eight were senior examiners and sixteen were junior or assistant examiners. Quite a large number of these senior examiners were out auditing the smaller school districts. While they were all senior examiners, Mr. DeHart, the supervisor in charge of municipal and school audits, testified that some of those out on the smaller school districts were not, in his opinion, competent to handle larger jobs. These examiners were all permitted to finish their assignments. Eleven of the senior examiners completed their work before February 2, 1939. They reported to the supervisor and were not given reassignments pending the disposition of the bill. In December 1938, the appellee, who was working in Wapello county, tried to telephone the appellant at Ottumwa about his being re-

tained as an examiner. He failed to contact him. He finished his assignment of auditing the school at Eddyville and reported on February 2, 1939, to the appellant, who told him that he would have to take up the matter of future work with Mr. DeHart. He did so and gave this version of the conversation:

"As I can remember it Mr. DeHart said: 'Well, Bill, there is not any work for municipal audits to be done right now. I will keep you in mind and if there is any work coming along, if you keep in touch with me, when work does come in I will see what I can do for you.' * * * I thanked him very much. I felt that was very nice of him."

Appellee testified that he had no further contact with the auditor's office after February 2, 1939, but wrote Mr. DeHart a letter sometime in the summer before he returned from the West, and received a reply that there was then no work for him. On April 1, 1939, there was but one examiner in the municipal and school audits who was at work. This one was Spurgeon, who had the city of Des Moines assignment, a difficult and important position, where the work was continuous. All the other forty-three senior and junior examiners, except Nauman, an assistant, who finished his assignment on April 12, 1939, had completed their work and had not then been reassigned.

The appellee left Iowa about April 1, 1939, for the western states, partly on vacation, partly on business for others, and in search of employment. He was in Nevada for a time, and went from there to Texas to look after some land for his father-in-law. He then went to California to assist someone else. He returned to Iowa on August 1, 1939, and, so far as the record shows, never in any way thereafter contacted the auditor's office or anyone connected with it. He filed his petition in this action on February 1, 1940, just one day short of a year after his dismissal.

After the optional-audit law became effective about April 1, 1939, but twelve examiners, including seniors and juniors, were employed up to and including the time of the trial, in the middle of April 1940. All of them, except Spurgeon, worked but intermittently, from a few weeks to a few months, as requests

would come in for audits. Several of these were assistants who were employed but a few weeks. At the time of the trial there were but seven examiners employed—four senior examiners and one junior examiner working on cities and towns, and two senior examiners working on schools. The junior examiner was Horsford, a service man, who began work in the fore part of October 1939. The six senior examiners were Oppendahl, McMurray, Spurgeon, Ely, Kooser, and Cassell. The five first mentioned were not appointed by the appellant but were given their positions by his immediate predecessor or by earlier auditors. Spurgeon and Kooser had been examiners in the auditor's office for many years and were retained through different administrations, regardless of the political-party affiliation of the auditor of state. This speaks for their efficiency. Of them, Mr. DeHart, who had also been in the office of the auditor since 1929, testified:

"Mr. Spurgeon is a very high type man and he has had considerable experience along with our work like this, with any other work. There are a number of big jobs, and we have examiners we would not appoint to it, and some examiners we do. Now I will except a man by the name of Mr. Kooser, because those men can handle their jobs though I have some examiners I would not put on such jobs, or assist me in those jobs."

Ely was appointed in March 1933. He lost about two months from January 1, 1939, to the time of the trial in mid-April 1940. Oppendahl, a service man, was appointed on September 9, 1937. He lost four months from January 1, 1939, to the time of the trial. Kooser lost about six weeks during this time. McMurray, a service man, was not appointed by the appellant. He was an assistant from January 1st to January 31, 1939, and a senior examiner from June 15, 1939, with intermissions, to the time of the trial. He lost almost seven months from January 1, 1939, to the time of the trial. Spurgeon, a service man, worked continuously. Cassell was the only one appointed by the appellant. He was an experienced examiner, first appointed in 1923, and had been in the auditor's office almost continuously since. He had been put in the county auditing group as an assistant on January 23, 1939, and transferred to

the municipal and school audits on April 17, 1939, as an assistant until July 29, 1939, when he was made a senior examiner and continued as such, with some intermissions, to the time of the trial. No one was appointed a senior examiner after February 2, 1939, the date of appellee's last service, who was not serving as an assistant on or prior to that date. O'Neill, an assistant prior to the time appellant took office, was promoted to senior examiner on January 9, 1939, and served intermittently in that capacity until December 1939, when he was not reassigned. Sandberg served as assistant from January 11, 1939, to February 4, 1939, and as senior examiner for about forty days after June 20, 1939. Both of the promotions of O'Neill and Sandberg were made while appellee was working and before the pendency of the optional-audit bill. It is true that Bassett, an assistant examiner for several years under the predecessors of appellant, served as a senior examiner from April 17, 1939, to September 6, 1939. But he was sick during December 1938, and, like all other examiners, was not reassigned pending the passage of the optional-audit bill. Both he and Cassell were given work when the appellee was absent from the state, and that was true of the promotions of McMurray and O'Neill. Yoder was appointed assistant on October 26, 1939, and served until December. Cobb served as assistant from January 25th to March 31, 1939. Nauman worked as assistant from January 12, 1939, intermittently for about four months. Yoder, Cobb, Nauman, Sandberg, Bassett, and O'Neill had all been unemployed for several months before the trial. Counsel for appellee dictated a stipulation into the record that the following-named persons who were employed as examiners between the dates of January 1, 1939, and the time of the trial were not veterans of the armed forces of the United States, to wit: Harold Ely, C. E. Cassell, J. K. O'Neill, and E. H. Kooser. It may be inferred from the evidence and also from the omission of their names from the stipulation that McMurray, Oppendahl, and Spurgeon, who were also senior examiners, were such veterans.

We think it is the fair conclusion under the record that the appellee was not discharged. Neither can it be said that the position of examiner was abolished by the optional-audit law,

but the effect of that law was to greatly reduce the need of examiners for auditing the finances of cities, towns, and schools, and to deprive twenty-two senior examiners and fifteen junior examiners of that group of employment. None of these thirty-seven examiners were discharged because of incompetency, and there was no requirement that charges be made against the appellee or the others. Lyon v. Civil Service Comm., 203 Iowa 1203, 1213, 212 N. W. 579. There was no work for them. As testified by DeHart, the appellant sought to keep available such number of senior examiners as could be kept reasonably steadily at work during the year, using assistants for temporary emergencies.

The proposition for which the appellee contends is that, because he is an honorably discharged soldier, he is entitled to have a position as senior examiner maintained for him. He is not asking, and he has not asked, for a position as assistant examiner. He prayed for reinstatement to his old position, and that is what the trial court adjudged he was entitled to have. The question involved in this division has not heretofore been before this court. It is not specifically provided for in the Soldiers' Preference Law. By section 1159 the beneficiaries of this law are given a preference over other applicants of no greater qualifications. It contemplates applicants for a vacancy or a new position. Neither situation exists in this case. There are no vacancies and no new positions. Here there were twenty-eight senior examiners with work for all of them under the statutes as they existed. By the passage of chapter 42 of the Laws of the Forty-eighth General Assembly, the work was so reduced that six senior examiners and one assistant could perform it, necessitating the dismissal of the other twenty-two. In such a situation, how are the six places to be filled? Are all of the examiners to be considered as applicants for the six places? The statute gives us little aid. The appellant cannot be required to employ more examiners than the work requires. He is entitled to use his own reasonable discretion in determining that matter. He selected six senior examiners from that division, of twenty-eight examiners, to fill the needed places. There is no evidence that he abused that discretion, nor that the six selected did not have greater qualifications than any of the remainder, including

the appellee. The trial court ordered the reinstatement of the appellee, but it did not specify which of the six he was to replace. Under the record, it is our conclusion that the judgment and order of the trial court that the appellee should be reinstated and preferred over any of the seven examiners in the appellant's service at the time of the trial is not sustained. Three of these men are, without question, service men—Horsford, the assistant, and McMurray and Oppendahl, senior examiners,—and as such are entitled to equal consideration with the appellee. There was no evidence whether Spurgeon was or was not a service man, but it is significant that the stipulation dictated into the record listing the nonservice men failed to include him. But if he is not a service man, the record establishes, without much question, that he and Kooser were the best-qualified men in the division of municipal and school examiners. Their record of service, as well as that of Cassell, under different administrations, confirms this conclusion as to their superior qualifications. The remaining senior examiner, Ely, was appointed in March 1933, and had been continuously on the force, and had greater experience than the appellee. Horsford was the only examiner whose original employment was by the appellant, and he is a service man. The other six examiners had served under his predecessors and were retained by appellant. This is quite convincing evidence that they were retained because of their greater efficiency and qualifications. There is no basis for any charge of bad faith, ulterior motives, or political preferment on the part of the appellant. The burden of establishing any such charges was upon the appellee, and he failed to sustain that burden. Babcock v. City of Des Moines, 180 Iowa 1120, 1128, 162 N. W. 763; Larson v. City of Des Moines, 216 Iowa 42, 247 N. W. 38. Appellant is an honorably discharged service man and there is testimony of a plaintiff in an associated case that the appellant told him he wished he would contest the matter in court to settle the questions involved. The dismissal of the appellee and the other examiners was brought about because of conditions and circumstances entirely beyond his control. The optional-audit law, if it did not abolish the position or office, brought about the abolishment of the work to be performed by that particular

division of examiners. As stated in Douglas v. City of Des Moines, 206 Iowa 144, 147, 220 N. W. 72, 73:

"Soldier preference, as enacted by our legislature, does not prevent the abolishment of an office * * *."

Neither does it prevent reduction or abolishment of work, or efficiency in administration of public offices. See, also, Lyon v. Civil Service Comm., supra, 203 Iowa 1203, 1213, 212 N. W. 579; Larson v. City of Des Moines, supra, 216 Iowa 42, 45, 247 N. W. 38; and Rounds v. City of Des Moines, 213 Iowa 52, 55, 238 N. W. 428, 429. In the case last cited, we said:

"The term 'preference,' as used in this chapter [60 of the Iowa Code], does not contemplate that an honorably discharged soldier once employed by a municipality shall be retained in such employment after the necessity thereof has expired."

As heretofore noted, the Soldiers' Preference Law gives the appellee no preference over the examiners retained by the appellant, who were also honorably discharged service men. Douglas v. City of Des Moines, supra, 206 Iowa 144, 147, 220 N. W. 72, 73. On the latter page, we said:

"Fundamentally, the 'Preference Statute' (Section 1159, supra) contemplates competition between two applicants: that is to say, an honorably discharged soldier, on the one hand, and a non-soldier, on the other. Without such situation, that legislative enactment has no application."

Neither is the appellee entitled, under this record, to displace some other employee, who is a nonservice man, but who possesses greater qualifications for the position of examiner. See Lyon v. Civil Service Comm., supra, 203 Iowa 1203, 1213, 212 N. W. 579.

II. The appellee was a senior examiner appointed by the appellant under section 114, Codes of 1935 and 1939. Appellant assigned as error the ruling of the court that the position held by the appellee was not one of strictly confidential relationship, and in holding that he was within the provisions of the Soldiers' Preference Law, appearing as chapter 60, Codes of 1935 and 1939. We hold that the assignment is good and that the

ruling of the court is reversible error. Our decision on this point is ruled by our decision on the identical issue in Klatt v. Akers, 232 Iowa 1312, 5 N. W. 2d 605.

We find it unnecessary to pass upon the other assignments of error.

The questions involved in this case and in its companion cases are troublesome ones. Decisions in these and similar cases which are adverse to the claimants often draw down upon the court, and individual members thereof, criticism that the Soldiers' Preference Law is too narrowly construed. To such strictures, we can say only, as did the court in Lyon v. Civil Service Comm., supra, 203 Iowa 1203, 1214, 212 N. W. 579, 584:

"The questions presented * * * involving, as they do, both the public welfare and the welfare of honorably discharged soldiers, have impressed upon us a great responsibility. We have endeavored to meet it with a proper appreciation of its importance to all concerned."

Appellee cross-appealed from the ruling and judgment of the court in deducting from the amount awarded the appellee the amount he had earned by other employment.

On appellee's cross-appeal, the judgment is affirmed. On appellant's appeal, the judgment is reversed.

WENNERSTRUM, C. J., and STIGER, SAGER, and HALE, JJ., concur.

GARFIELD, OLIVER, MILLER, and MITCHELL, JJ., dissent generally.

MILLER and MITCHELL, JJ., dissent as to division I.

GARFIELD, J. (dissenting)—I respectfully dissent.

I think there is substantial evidence to support the trial court's conclusion that appellee was not "holding a strictly confidential relation to the appointing officer," and, since the case is not triable de novo here, that finding cannot be disturbed.

OLIVER, MILLER, and MITCHELL, JJ., join in this dissent.

MILLER, J. (dissenting)—In addition to joining Judge Garfield's dissent herein, I also dissent from that part of the opinion

of the majority which holds in effect that the veteran's position was abolished. The trial court found otherwise; there was substantial evidence, in my judgment, to support such finding of fact; the proceedings below were ordinary proceedings, and the decision of the trial court on issues of fact, when supported by substantial competent evidence, cannot be disturbed by us on appeal. The conclusion reached by the trial court on this issue is in accord with the principles of law announced by us on a similar issue in the case of Dickey v. King, 220 Iowa 1322, 263 N. W. 823. I see no merit in defendant's appeal on this issue.

MITCHELL, J., joins in this dissent.