JERRY L. WOOD, appellant, v. HERSCHEL C. LOVELESS, mayor of City of Ottumwa, et al., appellees.

No. 48218.

(Reported in 58 N.W.2d 368)

920

May 5, 1953.

John D. Moon, Bailey C. Webber and Whorton & Truitt, all of Ottumwa, for appellant.

Willard E. Dullard and Jones & White, all of Ottumwa, for appellees.

Thompson, J.—On August 27, 1951, plaintiff was holding the position of Inspector of Police in the Ottumwa police department. On that date the city council enacted its Ordinance 1683, reorganizing this department. The ordinance enumerated the various positions and offices within the department, omitting the inspector of police. On the next day the council passed Ordinance 1684, which specifically abolished the position. This had the effect of demoting plaintiff to the position of patrolman,

the next lower rank for which he had seniority. It reduced his pay by $40 per month and of course materially changed his duties. On September 14 following he commenced this action in certiorari, challenging the validity of the ordinances and the legality of the acts of the defendants thereunder. The trial commenced on September 25; on November 16 the court filed its findings of fact and conclusions of law, and on December 14 its formal decree annulling the writ and entering judgment against plaintiff for costs. From this decree and judgment we have the present appeal.

The plaintiff is an honorably discharged veteran of the United States Navy where he served during World War II. He was appointed a patrolman on the Ottumwa police force in April 1941 and remained in this position until September 10, 1945, except for the time he was in the naval service. On the latter date he was appointed Assistant Chief of Detectives, which place he held until December 12 of the same year. He was then appointed Inspector of Police, remaining in this position until sometime in December 1948, when he became acting Chief of Police. In April 1949 he was appointed Chief of Police and held this position until he resigned from it on January 1, 1951. He then resumed his post of Inspector of Police and held it until the position was abolished by the two ordinances above referred to.

In 1945 he took promotional examinations for sergeant, captain, assistant chief of police, and inspector, and passed each. The only civil service positions he has actually held, however, are those of patrolman, assistant chief of detectives and inspector. The position of assistant chief of detectives was abolished some years ago. It follows that the only civil service rank which plaintiff holds, other than that of inspector if the office has not in fact been legally abolished by Ordinances 1683 and 1684, is that of patrolman.

Section 365.11, Code of 1950, requires that civil service commissions shall certify to the city council the names of the ten highest ranking applicants in the order in which they passed the qualifying examinations, and that newly created offices or vacancies shall be filled from these lists. But it is also provided

in the same statute that "in no case shall such preference continue longer than two years following the date of certification, after which said lists shall be canceled and no promotion to such grade shall be made until a new list has been certified eligible for promotion." Plaintiff does not claim he has taken any examinations since 1945, and consequently his name would not be upon any certified lists for offices other than those in which he has seniority through service.

Until 1941 there was no position of inspector of police in the Ottumwa department. In that year the council enacted Ordinance No. 1328 which created the position and provided its incumbent should have the powers and duties of the chief of police in case of his absence or disability; or, as plaintiff puts it, with emphasis, the inspector had the post of "second in command." In 1945 Richard L. Holcomb, an instructor at the State University and an expert in police organization, made a survey of the department at the request of the council and made twenty-nine different recommendations which he thought were calculated to improve the efficiency of the force. In 1949 Ordinance No. 1590 was enacted, putting into effect many of Professor Holcomb's recommendations. This ordinance divided the department into three bureaus; patrol, investigation and records, and central service. Central service included the divisions of radio and communications and of traffic. It was provided that the inspector of police should command the central service bureau. Ordinance No. 1628, enacted on January 4, 1950, abolished the bureau of investigation.

Ordinance 1590 comprised a detailed plan of organization of the department. Ordinance 1683 in effect, if not in terms, repealed 1590. It provided a much different and much less detailed and specific plan of organization. No bureaus were called for and much more responsibility for the organization and assignment of duties was placed upon the chief of police. Paragraph 2 of the ordinance says: "The police department of the City of Ottumwa, Iowa, shall consist of the Chief of Police, Assistant Chief of Police, Captains, Sergeants, Patrolmen and Police Matrons." Paragraph 7 provides that the assistant chief of police shall serve as second in command to the chief of police

and in the event of absence or disability of the chief shall perform all the duties of the chief. Under 1590 and preceding ordinances since 1941 the inspector of police had been "second in command"; and at least under 1590 the assistant chief had been "third in command."

Maurice McGlothlen, a nonveteran, had been assistant chief of police since "the spring of 1949." He was a radio technician and much of his work was in that field. He had had some experience in general police work but most of his duties has been concerned with radio and communications. Although not a veteran and so not entitled to preference under Code chapter 70 (the Soldiers' Preference Law) McGlothlen could not be removed from his position under the circumstances existing here —the length of time he had served being chiefly important. Glenn v. Chambers, 242 Iowa 760, 48 N.W.2d 275.

I. While the arguments in the case at bar range over a wide field, the important issue is one: Did Ordinances 1683 and 1684 in fact abolish the office of inspector? Considerable space and effort is devoted to the contention of the defendants that, this action being in certiorari, we are bound by the trial court's findings of fact if there is a substantial basis for them. Plaintiff says that we have held otherwise. We think it is not necessary to decide the point. There is no material dispute in the facts. It is the conclusion to be drawn from them which governs the case. See Klatt v. Akers, 232 Iowa 1312, 1324, 1325, 5 N.W.2d 605, 146 A. L. R. 808.

II. We have many times held, under both the Soldiers' Preference Law and the civil service statutes, that municipalities are not bound to keep those having rights under either upon the pay rolls if it is decided, in good faith, that the positions should be abolished, either because of financial necessity or the dictates of good and economical business management. In fact, section 365.28 of the civil service law makes provision for this situation:

"Whenever the public interests may require a diminution of employees in any classification or grade under civil service, the city council, by resolution and acting in good faith, and after notifying the commission of such action, may * * * :

"1. Abolish the office and remove the employee from his classification or grade thereunder * * *."

As to the same right under the soldiers' preference statutes, see Neargard v. Akers, 232 Iowa 1337, 5 N.W.2d 613; Rounds v. City of Des Moines, 213 Iowa 52, 55, 238 N.W. 428, 429; Lyon v. Civil Service Comm., 203 Iowa 1203, 1213, 212 N.W. 579; Douglas v. City of Des Moines, 206 Iowa 144, 147, 220 N.W. 72, 73 ("Soldier preference, as enacted by our legislature, does not prevent the abolishment of an office * * *"). In fact, plaintiff concedes that if the office was in fact and in good faith abolished, neither soldiers' preference nor civil service laws protect him.

III. No claim is made that plaintiff had been guilty of any conduct which would have justified his removal under the provisions either of chapter 70 or of chapter 365; nor were any charges filed or notice given to him. But if the office was properly abolished no charges or notice were required. Rounds v. City of Des Moines, supra; Kern v. City Council of Des Moines, 213 Iowa 510, 512, 239 N.W. 104. The case must turn upon the fact and validity of the abolishment of the office of inspector.

IV. We come then to the major question in the case stated at the beginning of Division I. At the outset of our determination as to whether the office of inspector of police was in fact abolished, as defendants contend and plaintiff denies, the question of good faith suggests itself. The statute, section 365.28, supra, says that the city council may "in good faith" abolish an office. Plaintiff does not in his specifications of error allege any bad faith on the part of the council, and we close this part of the discussion by saying we find no animus against plaintiff disclosed by the record and no other improper motive or evidence of wrongful purpose.

The real contention upon which plaintiff relies is that the office was not in fact abolished. He says the name and grade of the position and its emoluments were alone eliminated by Ordinances 1683 and 1684, leaving tenure, duration and duties the same. City of Des Moines v. Board of Civil Service Comrs., 227 Iowa 66, 287 N.W. 288, is cited and relied upon. In this

case one Johnson, holding the position of sanitary inspector, had been discharged when the position was transferred from one department to another. Other questions were involved and discussed; but upon the one thought by plaintiff to be analogous here the court held a mere transfer from one department, leaving the duties the same, did not abolish the office. Ervin v. Triplett, 236 Iowa 272, 18 N.W.2d 599, is not factually in point. It concerned the matter of a police officer who had been promoted to the position of detective, and whose superior officer attempted to return him to the lower rank of patrolman. There was no question of the abolishment of the office. Plaintiff also cites many authorities from other jurisdictions. All of them hold the office must in fact be abolished; that merely changing the title or setting up another office with the same duties does not eliminate the position. They are of little help here; we still have the same problem as to whether the office held by plaintiff was actually abolished.

Plaintiff places much stress upon the words "second in command", and says this was the primary duty and function of the office. From this he argues that, since there is still a "second in command", now the assistant chief of police, the office of inspector, which he seems to consider as practically identical with "second in command", has not been abolished. The able trial court said of this contention:

"Petitioner, in contending that the office has not been abolished prefers to call his office 'second in command', rather than Inspector. Such expression to some extent does describe his office, but only to a very small extent. It describes the rank. The amount of time during which the petitioner acted as Chief of Police during the absence or disability of the Chief himself is not shown, but it must necessarily be very short compared to the time worked. Most all his time was spent at other duties specified in the ordinance and assigned to him by the Chief, who had that authority."

We see no magic in the words "second in command." As the trial court pointed out, plaintiff would rarely be called upon

to take charge of the department; his duties were chiefly, in fact almost altogether, along other lines. The record shows he was ordinarily on duty in the daytime when the chief was also present. Their hours were not identical but were very largely overlapping.

As to the other duties which plaintiff performed, it is of course true that many of them have not been eliminated. The "Central Service Bureau", of which under Ordinance 1590 the inspector was to have charge, was eliminated by Ordinance 1683. Other duties, at the time of the trial below, had been by the chief of police assigned to other members of the department or were still unassigned. It will be noted that the trial was commenced less than one month after the passage of 1683 and 1684, so that there had not been much time for the reorganization of the department effected by those ordinances.

The fact that when an office is abolished there will be duties pertaining to it which must be taken over by others is not controlling. The entire picture must be viewed to determine the fact of abolishment. In Kern v. City Council of Des Moines, supra, the council had, for economic reasons, eliminated the office of city claim agent. The work which had been done by this officer was taken over by the city's legal department; that is to say, the same duties were performed by other city officers. This court, in its opinion (213 Iowa at page 512) quoted the then section 5712 of the 1927 Code (which is in effect the same as section 365.28, Code of 1950): " 'Whenever public interest requires a diminution in the number of employees under civil service the same may be reduced by resolution of the council.' " The opinion continues: "Plainly the city council, at least within proper discretion, alone must decide the existence or nonexistence of such public interest." It was held that the position was abolished. In Rounds v. City of Des Moines, supra, 213 Iowa at page 55, we said: "The power, therefore, of appellee city to reduce the number of employees or officers in any department or office of the municipality cannot well be questioned." See also Lyon v. Civil Service Comm., supra; Babcock v. City of Des Moines, 180 Iowa 1120, 162 N.W. 763; Butin v. Civil Service Comm., 179 Iowa 1048, 162 N.W. 565.

928

■ Plaintiff urges, however, that the number of employees in the department was not in fact reduced. There were as many members of the police force after plaintiff's demotion as before; there was one less police inspector, but one more patrolman. This does not aid plaintiff. The city council, in the exercise of its undoubted discretion, as shown by the quotations from Kern v. City Council of Des Moines and Rounds v. City of Des Moines, both supra, could determine what is for the public interest, within limits. It decided the police department was overstaffed with commanding officers and understaffed with patrolmen. There were too many generals, too few privates. That its determination did not agree with Professor Holcomb may be evident, but the decision was for it to make. We cannot weigh the advantages or disadvantages of the organizational plan set up by Ordinance 1590, which largely followed the Holcomb theory, against what the council later determined was a better system as effected by Ordinance 1683. We cannot substitute our judgment for that of the council when it is acting within its proper statutory limits. Warren A. Larson, commissioner of public safety, testified that he recommended the passage of Ordinance 1683 for "the purpose of economy and efficiency in the police department. * * * I was interested in economy and efficiency, which I feel run hand in hand. * * * There had to be some method in order to get the men away from certain desk jobs and other supervisory jobs and get them out on the street."

It is pointed out that at the time of the trial one Dimmitt, who had held the title of identification officer with the rank and pay of captain, was still drawing the same pay although the new ordinance likewise abolished the position of identification officer; and that certain other members of the department were drawing pay above that called for by their rank. The materiality of this evidence, except as it bears upon the bona fides of the abolishment of the plaintiff's position, is not apparent. We have pointed out that the trial was held within one month after the adoption of the new ordinance reorganizing the department, giving the chief of police and the head of the department of public safety little time to make all the changes required, and we are not disposed to accept the above failures to reduce pay

as substantial evidence of bad faith in abolishing the position of Inspector of Police. We conclude that the office of Inspector of Police has been abolished by the city council. The authority which creates an office may abolish it, if it does so in good faith. No one has been appointed to replace plaintiff. Some of his duties, such as head of the central service bureau, were abolished by the same ordinance which eliminated the position of inspector. Some of them have been distributed to other members of the department. It was the judgment of the council that this action was in the public interest. It has made some financial saving to the city and has at the same time put one more patrolman on the street.

V. Plaintiff urges that the action of the council in enacting the two Ordinances 1683 and 1684 was invalid because proper notice was not given to the civil service commission as required by section 365.28. The purpose of this requirement is apparently that the commission shall then "issue to each person so affected a certificate showing his comparative seniority or length of service in each classification or grade from which he is so removed" etc. Section 365.28, supra. An oral notice was given by the commissioner of public safety to the chairman of the civil service commission before the enactment of Ordinance 1683. We are cited to no authority holding this notice to be insufficient or that if it was so that failure to give a proper notice would be jurisdictional or would invalidate the ordinance. We think it sufficient.

VI. Plaintiff likewise says that the council acted by ordinance instead of by resolution as the statute requires. The terms "ordinance" and "resolution" are sometimes used interchangeably; a resolution is merely a less solemn form of ordinance. 62 C. J. S., Municipal Corporations, section 411, page 786. We said in Sawyer v. Lorenzen & Weise, 149 Iowa 87, 91, 127 N.W. 1091, 1093, Ann. Cas. 1912C 940:

"We are of the opinion, however, that the thing which the statute requires is an expression of the will of the council upon the question * * *. A 'resolution' is something less formal than an 'ordinance', and, generally speaking, is a mere expression

of the opinion or mind of the council concerning some matter of administration coming within its official cognizance."

That the council here could do by ordinance what it was empowered to do by resolution seems hardly debatable. It was an expression of its will.

VII. Plaintiff says Ordinances 1683 and 1684 are "contrary to the public interests and against public policy and are therefore void and invalid." But at a later point in his argument he says: "We have no quarrel with Ordinance No. 1683 but we respectfully urge the court that the arbitrary action of the appellees in their interpretation and application of said ordinance, as the same affects the appellant, is in direct violation of his rights guaranteed him under the Soldiers' Preference Laws and the Civil Service Laws of this state." Plaintiff's argument at this point is a resumé of his contentions heretofore noted. He again emphasizes his claim, which seems to be basic in his case, that "second in command" is an office in itself. He says:

"If the appellant can be demoted from his office of Second in Command by the simple expedient of transferring his *incidental* duties [italics quoted] thereunder to another officer of the Ottumwa Police Department, thereby claiming the office to be abolished, there is no office of Second in Command on any police department in the State of Iowa that is secure."

We have endeavored to show that instead of "second in command" being the office and all other duties incident thereto, "second in command", at least under the circumstances shown here, was an incident only to the office of Inspector of Police. To agree with plaintiff would be to make a small part greater than the whole.

We are in accord with the conclusions of the trial court.—Affirmed.

All JUSTICES concur.